BRADFORD v GENERAL MOTORS CORPORATION

Docket No. 56207. Submitted October 8, 1982, at Detroit.—Decided January 21, 1983. Leave to appeal denied, 417 Mich 1100.16.

Judith M. Bradford, an employee of Wyandotte Tool Company, was injured while operating a power press manufactured by E. W. Bliss Company and equipped with a die manufactured by General Motors Corporation. Bradford sued Bliss and GM in Wayne Circuit Court, alleging that the machinery involved was defective. Bliss settled the claim against it. GM filed a third-party action against Wyandotte for indemnity. The trial court, Michael J. Connor, J., granted summary judgment in favor of GM in the main action. Summary judgment was also granted in favor of GM in the main action. Summary judgment was also granted in favor of Wyandotte in the third-party action. Plaintiff appeals the granting of the directed verdict in favor of GM, and GM contingently cross-appeals the granting of summary judgment in favor of Wyandotte should the Court of Appeals reverse the trial court's grant of a directed verdict in its favor. *Held:*

1. A directed verdict in favor of GM was proper on plaintiff's claims that GM's dies were defective because they did not have enclosure guards on them and that GM negligently furnished the defective dies to Wyandotte since plaintiff failed to establish a prima facie case that GM knew or should have known of Wyandotte's dangerous work site, which would render the dies unsafe. The dies were not unsafe for their foreseeable uses.

2. The trial court did not err in directing a verdict in favor of GM on plaintiff's claim that GM had a nondelegable duty to

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 53 Am Jur 2d, Master and Servant § 195.
[1] 61 Am Jur 2d, Plant and Job Safety § 31 *et seq.*
    63 Am Jur 2d, Products Liability §§ 63, 65, 68, 131.
    Modern cases determining whether product is defectively designed. 96 ALR3d 22.
    Products liability, strict liability in tort. 13 ALR3d 1057.
[2] 41 Am Jur 2d, Independent Contractors §§ 26, 40-47.
    When is employer chargeable with negligence in hiring careless, reckless, or incompetent independent contractor. 78 ALR3d 910.

ensure that its dies were used safely by Wyandotte because the work undertaken was intrinsically dangerous absent special precautions. When machines are properly guarded, as Wyandotte's should have been, the operation of a power press does not rise to such a danger that public policy should hold GM, as the entruster of the dies, nearly strictly liable for harm.

3. The trial court properly entered a directed verdict against plaintiff's claim that GM negligently selected Wyandotte as a contractor and then negligently entrusted the dies to Wyandotte with reason to know Wyandotte would use them negligently. The evidence did not show that GM knew or should have known of the unguarded condition of Wyandotte's presses.

4. The trial court did not err in excluding evidence which consisted of deposition testimony taken from another, unrelated case. The evidence was irrelevant.

5. GM's third-party complaint need not be considered since the trial court's judgment is being affirmed.

Affirmed.

1. PRODUCTS LIABILITY — DEFECTIVE PRODUCTS — DIES.

A die manufactured without enclosure guards may be used in a reasonably safe manner by other methods of guarding the point of operation, and it cannot be said that it was foreseeable to a defendant die manufacturer that a set of dies it manufactured without enclosure guards and entrusted to an injured plaintiff's employer for purposes of testing would be used in an unsafe manner without guards where, at the time of the plaintiff's injury, the occupational safety act required each employer to maintain conditions of work which were reasonably safe and healthful for employees (MCL 408.852; MSA 17.49[2], now MCL 408.1009, 408.1011; MSA 17.50[9], 17.50[11]).

2. MASTER AND SERVANT — INDEPENDENT CONTRACTORS — DANGEROUS WORK — DELEGATED DUTY — NEGLIGENCE.

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others, unless special precautions are taken, is subject to liability for physcial harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

3. MASTER AND SERVANT — INDEPENDENT CONTRACTORS — DANGEROUS WORK.

One who employs an independent contractor to do work involving

a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physcial harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

*Lakin, Worsham & Victor, P.C.*; (by *Larry A. Smith*), for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *Joseph V. Walker* and *Christine D. Oldani*), and *Otis M. Smith,* General Counsel, (of counsel), for General Motors Corporation.

*Lacey & Jones* (by *Stephen Jay Schwartz*), for Wyandotte Tool Company.

Before: DANHOF, C.J., and N. J. KAUFMAN and D. C. RILEY, JJ.

PER CURIAM. The plaintiff, Judith M. Bradford, was injured while operating a power press. She sued the manufacturer of the press, the E. W. Bliss Company, and the manufacturer of the die being used on the press, General Motors Corporation (GM). The plaintiff settled with the E. W. Bliss Company. General Motors sued the plaintiff's employer, Wyandotte Tool Company (Wyandotte) in a third-party action for indemnity. The trial court granted Wyandotte summary judgment on GM's indemnity claim and granted GM a directed verdict on the main action. The plaintiff appeals the directed verdict for GM. In a cross-appeal, GM appeals the summary judgment for Wyandotte. GM's cross-appeal is contingent upon this Court's reversing the directed verdict and remanding the action for further proceedings. Because we affirm

the directed verdict, we will not address GM's issues on cross-appeal.

Wyandotte does not produce parts for GM. Instead, GM's dies are only tested at Wyandotte's facility. When new dies are made, GM tests them for quality of the products stamped. Because GM cannot afford to shut down its assembly lines to use the presses for test stamping, GM sends the dies to Wyandotte to test them so that testing will not interfere with ordinary manufacturing operations. The plaintiff was injured during this process when her hand was caught between the upper and lower dies. According to testimony, the machine was not guarded according to OSHA standards and the dies did not have built-in guards.

I

In her first issue, the plaintiff argues that granting the directed verdict was error because the proofs demonstrated that GM negligently furnished defective dies to Wyandotte. The plaintiff argues that GM had a duty to put enclosure guards on its dies. These guards would prevent a press operator from placing her hand between the dies.

In *Fredericks v General Motors Corp,* 411 Mich 712; 311 NW2d 725 (1981), the Supreme Court rejected the argument raised here. In that case, a press operator sued GM when his hand was caught between the dies of a power press. The dies were owned by GM, although built by another company, and were used by the plaintiff's employer to manufacture parts for GM. A directed verdict was granted for GM. The Supreme Court upheld the directed verdict, stating:

"A product is defective if it is not reasonably safe for

its foreseeable uses. An unguarded die may be used in a reasonably safe manner in a guarded press or in an unsafe manner in an unguarded press. At the time of plaintiff's injury 1967 PA 282 required that '[e]ach employer shall establish and maintain conditions of work which are reasonably safe and healthful for employees'. In light of this statutory duty imposed on Manistee Drop Forge we cannot hold as a matter of law that it was foreseeable to defendant that the product it supplied would be used in an unsafe manner rendering it defective." *Fredericks,* 720-721.

*Fredericks* controls this case. When Bradford was injured in 1973, the statute referred to in *Fredericks* was still in effect. 1967 PA 282; MCL 408.852; MSA 17.49(2), replaced by 1974 PA 154; MCL 408.1009; MSA 17.50(9); MCL 408.1011; MSA 17.50(11). GM, then, was justified in expecting Wyandotte to fulfill its statutory duty to provide a safe workplace, including machines properly guarded under OSHA and MIOSHA. Under *Fredericks,* the dies involved here were not unsafe for their foreseeable uses. The plaintiff did not establish a prima facie case that GM knew or should have known of Wyandotte's dangerous work site, which would render the dies unsafe. The granting of a directed verdict was proper.

II

The plaintiff next argues that GM had a nondelegable duty to ensure that its dies were used safely by Wyandotte because the work undertaken was intrinsically dangerous absent special precautions. In this regard, the plaintiff argues that Wyandotte is an independent contractor.

Michigan has adopted the Restatement rules of nondelegability of risks of intrinsically dangerous activities. *McDonough v General Motors Corp,* 388

Mich 430, 438-439; 201 NW2d 609 (1972). The Restatement rules are:

> "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise." 2 Restatement Torts, 2d, § 416, p 395.

> "One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger." 2 Restatement Torts, 2d, § 427, p 415.

There is substantial overlap between §§ 416 and 427. Comment a to § 416, 2 Restatement Torts, 2d, p 395. We note first that, contrary to the defendant's argument, these sections are not necessarily limited to landowner cases. See Comment d to § 416, 2 Restatement Torts, 2d, p 397 (trucks). We do, however, agree that the plaintiff failed to show a "peculiar risk" (§ 416) or "special danger" (§ 427). When machines are properly guarded, as Wyandotte's should have been, the operation of a power press does not rise to such a danger[1] that public policy should hold GM, as the entruster of the dies, nearly strictly liable[2] for harm. The trial

[1] The plaintiff presented evidence of total injuries from presses. On appeal, she argues that "it must be assumed" that the high rate of injury includes guarded machines. It is insufficient trial proof to assume on appeal.

[2] *Vannoy v City of Warren,* 15 Mich App 158, 163; 166 NW2d 486 (1968), *aff'd* 386 Mich 686; 194 NW2d 304 (1972).

court did not err by directing a verdict on this theory of recovery.

## III

The plaintiff's third argument is divided into two parts. She first argues that GM negligently selected Wyandotte as a contractor. She then argues that GM negligently entrusted the dies to Wyandotte with reason to know Wyandotte would use them negligently. Both theories require that GM knew or should have known about Wyandotte's unguarded machines. See *Fredericks v General Motors Corp,* 411 Mich 719. The plaintiff showed that GM engineers visited Wyandotte to check on progress. These engineers were quality control experts checking the stampings. They had no expertise in occupational safety enabling them to discern safety problems. The plaintiff did not show actual knowledge by GM of the deficiencies. In fact, the plaintiff's proofs showed only that GM employees had been at Wyandotte. The plaintiff did not show that these employees were familiar with the safety features on the press. Absent more convincing proof, and considering Wyandotte's affirmative legal duty to provide a safe workplace, we conclude that the trial court properly entered a directed verdict. The evidence did not show that GM knew or should have known of the unguarded nature of Wyandotte's presses.

## IV

As her final issue, the plaintiff argues that the trial court erred in excluding "deposition" testimony. The deposition was actually taken in conjunction with the *Fredericks* case. The plaintiff sought to introduce not the deposition, but an incomplete three-page portion of the deposition, quoted in the Court of Appeals *Fredericks* case, 48 Mich App 585-587. We agree with the defendant

that this evidence is irrelevant.[3] The *Fredericks* testimony dealt with the Manistee Drop Forge plant, and not with GM's knowledge of the Wyandotte facility. The plaintiff argues that the statement is an admission, but even this is not shown. The evidence rules require that a statement concern a matter within the declarant's scope of employment. MRE 801 (d)(2)(D).[4] This foundation may have been present in *Fredericks* but was not offered here. We will not presume it.

In view of our affirmance, we need not consider GM's third-party complaint.

Affirmed.

---

[3] MRE 402.

[4] See also MRE 106 regarding the completeness of the deposition.