*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW BAILLIE,

        Plaintiff-Appellant,

v

BRYAN BALL,

        Defendant-Appellee,

and

DYER BROTHERS PLUMBING & HEATING, LLC, STEVE'S PLUMBING, LLC, SOO FIREPLACE AND STONE, doing business as DON EARL HEATING AND AIR CONDITIONING, INC., CARDINAL PLUMBING & HEATING, and LOUIE'S WELL DRILLING,

        Defendants.

UNPUBLISHED
December 17, 2024
3:15 PM

No. 365994
Chippewa Circuit Court
LC No. 21-016366-CK

Before: GARRETT, P.J., and RICK and MARIANI, JJ.

PER CURIAM.

In this case involving the building and sale of a residential property, plaintiff, Matthew Baillie, asks us to reverse the trial court's orders granting summary disposition to defendant, Bryan Ball, on Baillie's claims of fraudulent misrepresentation, silent fraud, and negligence. For the reasons discussed, we affirm the dismissal of Baillie's fraud claims, but we reverse the dismissal of Baillie's negligence claim, and we remand for further proceedings.

## I. BACKGROUND

Ball is a licensed residential builder and, between 2012 and 2016, Ball built a house and other buildings on a property located in Sault Sainte Marie. Ball lived on the property until 2020, when he sold it to Baillie. As part of the property sale, Ball signed a seller's disclosure statement

in which he represented that certain items or systems were "in working order," including the electrical system, water heater, plumbing, water softener/conditioner, septic tank and drain field, central heating, fireplace, and chimney. Ball also represented that there were no known environmental problems; no structural changes that had been made "without necessary permits or licensed contractors;" and no "Settling, flooding, drainage, structural or grading problems."

Before closing, Baillie had the home inspected and the report included 62 "comments" on the property, and 16 of those comments were identified as deficiencies. The parties executed an addendum that required Ball to repair three of the "deficient" issues and one of the other issues identified in the home inspection report. A few days later, Baillie executed a release of contingency, indicating that "the home inspection contingency has been met with satisfaction and I/we wish to proceed with the purchase of the property." The parties proceeded to closing and the sales contract contained a clause stating that the home was sold "as is." The crux of Baillie's complaint was that, after taking possession of the property, he discovered numerous defects, including some that were serious enough to render the premises uninhabitable.

Baillie sued Ball for fraudulent misrepresentation arising out of alleged misrepresentations in the seller's disclosure statement, silent fraud arising out of Ball's alleged failure to disclose the defects, and negligence. The trial court dismissed the latter two claims under MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted) because it ruled that Ball owed Baillie no duty and the court rejected the proposition that Ball must have been aware of the defects merely because he was a residential builder, which the trial court described as "strict liability." The trial court also dismissed Baillie's fraudulent misrepresentation claim under MCR 2.116(C)(10), and again ruled that attributing knowledge of the defects to Ball would impermissibly impose strict liability on him. The trial court further concluded that Baillie's home inspection should have alerted him of the need to examine the property further before closing.

## II. STANDARDS OF REVIEW

This Court reviews "de novo questions of statutory interpretation and whether a trial court properly granted summary disposition." *In re Guardianship of Malloy*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165018); slip op at 12. A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim, and it must be decided on the pleadings alone, accepting all factual allegations as true. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019). "A motion for summary disposition under MCR 2.116(C)(10) challenges the factual sufficiency of the complaint, with the trial court considering the entire record in a light most favorable to the nonmoving party." *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 34; 852 NW2d 78 (2014). "A motion under MCR 2.116(C)(10) should be granted if the evidence submitted by the parties fails to establish a genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 424-425; 751 NW2d 8 (2008) (quotation marks, alteration, and citation omitted). In addition, this Court reviews "de novo the determination whether a duty exists." *Hill v Sears, Roebuck & Co*, 492 Mich 651, 659; 882 NW2d 190 (2012). "[T]his Court will affirm if the trial court reached the right result, even if for the wrong reason." *Committee for Marshall-Not the Megasite v City of Marshall*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369603); slip op at 23.

## III. FRAUD

Baillie argues that the trial court erred by dismissing his fraud claims because Ball made material misrepresentations on which Baillie relied. We disagree.

### A. LEGAL PRINCIPLES

An "as is" clause in a contract for the sale of real property generally "constitutes persuasive evidence that the purchaser assumed the risk of loss," except "where a seller makes fraudulent representations before a purchaser signs a binding agreement." *Coosard v Tarrant*, 342 Mich App 620, 636; 995 NW2d 877 (2022) (quotation marks and citation omitted). Michigan recognizes three theories of "fraud," consisting of "(1) traditional common-law fraud, (2) innocent misrepresentation, and (3) silent fraud." *Id*. at 633 (quotation marks and citation omitted). If a claim of fraud is based on alleged falsehoods in a seller's disclosure statement, only the common-law fraud and silent fraud theories may be maintained.[1] *Roberts v Saffell*, 280 Mich App 397, 414; 760 NW2d 715 (2008). The elements of common-law fraud are:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*Coosard*, 342 Mich App at 633 (quotation marks and citation omitted).]

Silent fraud "requires a plaintiff to set forth a more complex set of proofs," and it can arise where a person suppresses or fails to disclose a material fact under circumstances where that person had a legal duty of disclosure, generally meaning the person made some kind of statement that was misleading in its effect because it was incomplete. *M&D, Inc v W B McConkey*, 231 Mich App 22, 28-32; 858 NW2d 33 (1998) (quotation marks and citation omitted). "[T]here is no general inchoate duty to disclose all hidden defects," and silent fraud or fraudulent concealment is not established merely because "the seller knew there was a hidden defect" and "the purchaser had no knowledge of it." *Id*. at 30-32 (quotation marks and citation omitted).

A plaintiff's reliance on a false representation must be reasonable. *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 689-691; 599 NW2d 546 (1999). "Reasonableness generally requires consideration of context and the totality of the circumstances." *Coosard*, 342 Mich App at 638-639. A party claiming to have been defrauded is not obligated to undertake an affirmative investigation into the truth of any representations, but the party may not choose to ignore any actual knowledge presented to the party that calls the veracity of the representation into doubt. *DBD Kazoo LLC v Western Mich LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 361299); slip op at 8-10; accord *Coosard*, 342 Mich App at 637-638. A purchaser is therefore

---

[1] Additionally, an "as is" clause independently precludes a claim of innocent misrepresentation. *Coosard*, 342 Mich App at 637. On appeal, Baillie does not contest the trial court's dismissal of his innocent misrepresentation claim.

entitled to rely on representations in a seller's disclosure statement unless the purchaser has been "presented with some information or affirmative indication that further investigation was necessary." *Coosard*, 342 Mich App at 637-638.

## B. ALLEGED MISREPRESENTATIONS

Although the misrepresentations Baillie alleged that Ball made do not alter our conclusion that the trial court correctly dismissed Baillie's fraud claims, we address them because of their relevance to Baillie's negligence claim that the trial court must reconsider on remand. First, by representing that major systems on the premises were "in working order," Ball necessarily represented that those systems were operable and free from major defects that required repairs. Second, assuming the truth of Baillie's allegations, there is a genuine question of fact whether Ball must have known about some of the problems with the property when he filled out the seller's disclosure statement.

We are unpersuaded by Ball's argument that he made no misrepresentation because the word "defect" does not appear in the seller's disclosure statement. By representing that various systems were "in working order" or did not have any known "problems," Ball necessarily represented that they were free from "defects." A "defect" generally means a fault, shortcoming, or imperfection. *Allison*, 481 Mich at 434. In the context of products liability, "[a] product is defective if it is not reasonably safe for its foreseeable uses." *Ghrist v Chrysler Corp*, 451 Mich 242, 249; 547 NW2d 272 (1996) (quotation marks and citation omitted). In the context of premises liability, keeping premises in "reasonable repair" requires correction of defects in the property. *Allison*, 481 Mich at 434-435. In the context of a sewage backup event, a malfunctioning valve in a water filtration system that caused too much water to be discharged into a sewer constituted a "defect." *Cannon Twp v Rockford Pub Schs*, 311 Mich App 403, 417-418; 875 NW2d 242 (2015). Similarly, a "defect" in a sump pump is a sump pump that is not in working order. *Schaff v Time Investments Ltd*, unpublished per curiam opinion of the Court of Appeals, issued December 22, 2022 (Docket No. 359852), p 4.[2] From these principles, it is reasonable to extrapolate that a system is not "defective" if it is "in working order" and "free from problems."

The trial court erroneously construed Baillie's argument as one that would hold Ball strictly liable for alleged defects merely because he was a residential home builder. In context, Baillie's argument is that Ball was a residential builder *and* that he actually built the house and other buildings at issue. As one example, Baillie alleges that some of the floor joists were 24 inches from center to center. If Ball personally installed or participated in the installation of those joists, then Ball had actual knowledge of the spacing between the joists. Professional licensure can constitute "evidence of qualifications." *Mulholland v DEC Int'l Corp*, 432 Mich 395, 403-404; 443 NW2d 340 (1989). Beyond that, residential builder licenses generally require some demonstrated evidence of competence and relevant education. MCL 339.2404b. Therefore, a trial court may not conclusively determine that Ball knew whether 24-inch spacing between joists was

---

[2] Unpublished opinions are not binding on this Court, but they may be considered instructive or persuasive. *Centria Home Rehab, LLC v Philadelphia Indemnity Ins Co*, 345 Mich App 649, 665-666; 9 NW3d 104 (2023).

legal or safe merely because he holds a professional building license, but Ball's license is *some* evidence that he had more expertise than a layperson on that issue.

Thus, for purposes of summary disposition, the fact that Ball admittedly built the house himself is evidence that he had actual knowledge of matters like the spacing between floor joists, whether he had to obtain permits, the materials used in the construction of the buildings, whether plumbing was accessible, the thickness of the foundation, and so on. The fact that Ball is a licensed residential builder is also evidence that he knew whether any of those design or implementation details were legal or safe—in other words, whether they constituted defects that needed correction. Finally, as Baillie argued, because Ball actually lived in the house, he must have known whether the heating system worked. Although the parties nonetheless need to offer proofs at trial, Baillie presented sufficient evidence to establish issues of material fact for purposes of Ball's motion for summary disposition.

## C. REASONABLE RELIANCE

Notwithstanding evidence of Ball's knowledge of issues related to the construction of the buildings, Baillie could not survive Ball's motion for summary disposition on his fraud claims because Baillie had ample information to show that Ball's representations were unreliable. As stated, "[a] plaintiff who was given evidence that information was unreliable cannot, nonetheless, reasonably rely upon it." *DBD Kazoo LLC*, ___ Mich App at ___; slip op at 10. In this case, Baillie had detailed information from the home inspection about serious problems with the property that existed at the time of the inspection. Further, Baillie had to be aware of some of the alleged defects he listed in his complaint because of information in the home inspection report. We also note that Baillie clearly read the inspection report because he specifically asked Ball to fix some of the issues noted in it.

The report listed a variety of concerns, including missing outlet covers, exposed wiring, missing knockout covers in electrical panels, a hazardous double-tapped electrical breaker, missing stonework, cracked windows, heaving concrete in front of the garage door, and an inoperable dishwasher. But Baillie stated many of those concerns in his complaint, even though he was aware of them before closing. Further, some of the defects Baillie listed in his complaint would have been obvious when simply walking through the house, including protruding wall outlets and a light hanging two feet over a bathtub. Moreover, the inspection report explicitly stated that the inspector could not turn on the in-floor heating and boiler. Baillie therefore actually knew that the heating system was not "in working order." The inspector also found that water could not be turned on in a bathtub which, although not enumerated by Baillie as a specific complaint, nonetheless indicated that the plumbing was also not problem-free.

Ultimately, it is immaterial that some of the alleged defects were concealed, because at issue is whether it was reasonable for Baillie to rely on Ball's alleged misrepresentations. Because Baillie had information demonstrating that Ball's representations in the seller's disclosure statement were unreliable, Baillie could not have reasonably relied on their veracity. We see no genuine issue of material fact on that point, and therefore, the trial court correctly dismissed Baillie's fraud claims.

## IV. NEGLIGENCE

We hold, however, that the trial court erred by dismissing Baillie's negligence claim, because Baillie can pursue a negligence claim premised on Ball's failure to disclose known unreasonably dangerous conditions.

### A. LEGAL PRINCIPLES

"All negligence actions, including those based on premises liability, require a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 110; 1 NW3d 44 (2023). "A duty of care may arise by statute, by a contractual relationship, or under the common law," and "there must be a relationship between the parties and the harm must have been foreseeable." *El-Jamaly v Kirco Manix Constr, LLC*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket Nos. 164902 through 164904); slip op at 24 (quotation marks and citation omitted). Although some kind of injury to the plaintiff must have been foreseeable, the particular injury that actually occurred need not have been specifically foreseeable. *Id*. at ___; slip op at 30. Further, although people have "a general duty to conform to the legal standard of reasonable conduct in the light of the apparent risk," that does not create a duty, but is "the scope of the obligation created by an existing duty." *Christy v Glass*, 415 Mich 684, 696-697; 329 NW2d 748 (1982) (quotation marks and citation omitted).

In general, sellers of real property owe no duty for purposes of a negligence claim to the buyer, subject to two exceptions: the seller must disclose "any concealed condition known to the seller that involves an unreasonable danger," and "the seller is liable to those outside the land for a dangerous condition on the land until the buyer discovers or should have discovered it." *Roberts*, 280 Mich App at 402-403. An "as is" clause in a contract for the sale of real property will otherwise transfer to the buyer "the risk of the property becoming uninhabitable" on the basis of "those defects which were unknown at the time that the contract was executed." *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 32; 331 NW2d 203 (1982). In a fraud action, the buyer need not show that the condition was unreasonably dangerous, but unreasonable dangerousness of the undisclosed condition is critical to a negligence claim by a property purchaser against the seller. *M&D, Inc*, 231 Mich App at 34-35. This Court has, albeit in dicta, commented that "an improperly installed wood-burning stove," "an improperly capped artesian well," and bowing basement walls that could result in the structure collapsing were all "arguably" dangerous conditions. *Lorenzo v Noel*, 206 Mich App 682, 686, 687 n 2; 522 NW2d 724 (1994).

## B. DISCUSSION

Although Baillie cannot prevail on his fraud claims, he can pursue a negligence claim against Ball if Ball failed to disclose known unreasonably dangerous, but concealed conditions. *Roberts*, 280 Mich App at 402-403; *M&D, Inc*, 231 Mich App at 34-35. The trial court erred by dismissing Baillie's negligence claim without determining whether Baillie's alleged defects were concealed and unreasonably dangerous such that Baillie could sustain a claim of negligence as to some or all of them. This is not something we will assess for the first time on appeal.

The dismissal of Baillie's fraud claims is affirmed, the dismissal of Baillie's negligence claim is reversed, and the case is remanded for further proceedings. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Philip P. Mariani