CACEVIC v SIMPLIMATIC ENGINEERING COMPANY

Docket No. 207154. Submitted January 5, 2000, at Detroit. Decided July 18, 2000, at 9:10 A.M. Leave to appeal sought.

Lena and Nuo Cacevic brought a products liability action in the Oakland Circuit Court against Simplimatic Engineering Company, seeking damages for injuries sustained by Lena while operating a palletizer machine manufactured by the defendant. The court, David F. Breck, J., entered a judgment of no cause of action consistent with the jury's verdict. The plaintiffs appealed, alleging errors in jury instructions regarding the alleged negligent design of the machine and in the admission of evidence.

The Court of Appeals *held*:

1. The court erred in instructing the jury that the "manufacturer of a machine is under no duty to adopt a different design if the dangers to be avoided in the existing design, if any, are obvious and patent to all."

2. A manufacturer in a case alleging design defects is not absolved of liability simply because the danger associated with the product (regardless of whether the product is a simple or nonsimple product) is open and obvious. The obviousness of a danger is merely one factor in the analysis of whether a design is unreasonable. The test of liability is not the latent-patent rule, but whether the danger from which the plaintiff suffered injury was unreasonable and foreseeable.

3. The court's erroneous instruction was not harmless. The failure to vacate the verdict would be inconsistent with substantial justice. The judgment must be reversed and the matter must be remanded for a new trial.

4. The admission of evidence regarding Nuo Cacevic's illegal entry into the United States and his use of a fictitious social security number for obtaining employment and filing tax returns, while arguably minimally relevant to show his truthfulness, was clearly unduly prejudicial to the plaintiffs. All such evidence must be excluded on retrial.

Reversed and remanded.

JANSEN, P.J., concurring, wrote separately to state that the evidence regarding Nuo Cacevic's illegal alien status and use of a ficti-

tious social security number for obtaining employment and filing tax returns could never be considered to be minimally relevant to any issue at trial.

Products Liability — Design Defects — Manufacturer's Duty.

A manufacturer's duty at the time it designs its product is to eliminate any unreasonable risk of foreseeable injury; the factual inquiry to be presented to the trier of fact in a products liability action alleging negligent design is whether the manufacturer exercised reasonable care in making the design choices it made at the time the product was created; the trier of fact must determine from the evidence whether the manufacturer knew or should have known of the design's propensity for harm at the time the product was designed to the extent that the manufacturer's conduct was unreasonable; it is relevant to examine whether the alleged design defect was open and obvious at the time the plaintiff was injured, but the obviousness of a risk inherent in either a simple or nonsimple product, alone, does not obviate the manufacturer's duty to avoid unreasonable risks and foreseeable injuries at the time the product is designed.

*Gregory Fisher Lord,* for the plaintiffs.

*Beach & Ager* (by *Eugene H. Beach, Jr.*), for the defendant.

Before: Jansen, P.J., and Hood and Wilder, JJ.

Wilder, J. Plaintiffs Lena and Nuo Cacevic appeal as of right from a judgment entered following a jury verdict finding no cause of action in this products liability action. We reverse and remand.

I. FACTS AND PROCEEDINGS

Plaintiff Lena Cacevic worked as a palletizer operator at Johnson Controls' Novi plant. While working the night shift on September 3, 1993, Lena sustained serious injuries to her right hand and arm when she reached inside the palletizer machine to free a pallet that became stuck in the elevator component of the

machine. Lena tried to clear the jam by inserting her right hand and arm under a mesh guard into the pallet infeed opening to reach for the empty pallet and remove it from the machine. As Lena did this, the elevator raised the pallet, striking her hand and arm.

Plaintiffs filed the instant action against defendant Simplimatic Engineering Company, the manufacturer of the palletizer machine, alleging that defendant negligently designed and manufactured the palletizer by failing to include adequate and proper safeguards, provide adequate and proper instructions, devices, or methods to operate the machine, and provide adequate and proper warnings of both the inherently dangerous areas of the machine and the dangers in operating the machine. At the conclusion of the trial, the jury returned a verdict of no cause of action in favor of defendant.

The product at issue in this case is a Simplimatic Model 40 palletizer, a large, two-story machine that stacks eight layers of empty, plastic, soft drink bottles on wooden pallets that are wrapped for delivery to major soft drink companies. The palletizer was originally built by defendant in 1984 and subsequently sold to Hoover Universal in Taylor, Michigan. In 1989, Johnson Controls bought Hoover's bottling operations and the palletizer was relocated to Johnson Controls' Novi plant.

The palletizer consists of two levels and four major components: (1) an intake palletizer dispenser and conveyor, (2) a hoist or elevator, (3) an accumulator bed, and (4) an exit conveyor that releases the full pallets. The palletizing process begins with a wooden pallet being automatically placed on an intake conveyor and carried to the elevator shaft where it stops

and waits for clearance to enter the elevator. Clearance is determined by photo cells that sense when full pallets exit the elevator and when empty pallets may enter. The empty pallet automatically moves forward into the elevator and is carried up about fifteen feet by hoist chains to the upper level where an accumulator bed gathers the bottles and then sweeps them onto the pallet. As each empty pallet is loaded with bottles in the elevator, another empty pallet enters the intake dispenser and is conveyed to the elevator where photo cells signal the machine to wait for the full pallet to leave the elevator before allowing the empty pallet to enter.

During normal use, the palletizer's operator stands on a platform at the upper level near the moving accumulator bed where bottles coming down the assembly line are released. When a certain number of bottles have been collected, the operator presses a button to load them all onto an empty pallet that has been carried to the top of the machine by the elevator. As each layer of bottles is loaded, the elevator moves down just enough so that the tops of the bottles are even with the accumulator bed. The operator then places a "tier sheet" on top of the bottles to form a "floor" on which the next layer is placed. The operator repeats this process until there are eight layers of bottles on the pallet. When the pallet is fully loaded, the operator presses another button, lowering the elevator to ground level where the full pallet rests on a set of conveyor chains that slowly move the pallet out the discharge side of the elevator shaft. Once the full pallet is discharged, it is automatically transported to a wrapping area.

Most of the operation of the palletizer is automatic, but there are certain functions that an operator is required to perform to keep the machine running. Generally, an operator is required only at the upper level of the machine; however, on occasion, when a pallet gets jammed in the elevator, the operator or another employee must run down to the lower level to clear the jam before resuming normal operations. The palletizer is equipped with normal "on/off" controls, as well as three emergency stop buttons and a master electrical control panel with a lockable disconnect that completely isolates the machine from the electrical mains.

## II. ANALYSIS

### A. JURY INSTRUCTIONS

Plaintiffs argue that the trial court erred in instructing the jury that the manufacturer of a product owes no duty to design its product to eliminate foreseeable, unreasonable risks of harm that are "open and patent to all." We agree.

Claims of alleged instructional error are reviewed on appeal for an abuse of discretion. *Grow v W A Thomas Co*, 236 Mich App 696, 702; 601 NW2d 426 (1999). Jury instructions are reviewed in their entirety to determine whether they fairly apprised the jury of the applicable law and the issues to be tried in the case. *Id.* This Court will not reverse a trial court's decision regarding supplemental instructions unless failure to vacate the verdict would be inconsistent with substantial justice. *Id.*

At the conclusion of the presentation of proofs, the trial court instructed the jury in accordance with SJI2d 25.31 as follows:

> The defendant has the duty to use reasonable care at the time it designed and manufactured the palletizer so as to eliminate unreasonable risks of harm or injury which were reasonably foreseeable.
>
> However, the defendant has no duty to design or manufacture [the palletizer] to eliminate reasonable risks of harm or injury or risks that were not reasonably foreseeable.
>
> Reasonable care means that degree of care which a reasonably prudent manufacturer would exercise under the circumstances which you find existed in this case at the time the machine was manufactured. It is for you to decide based on the evidence what a reasonably prudent manufacturer would do or would not do under these circumstances.
>
> A failure to fulfill the duty to use reasonable care is negligence.

Pursuant to defendant's request, the trial court also instructed the jury regarding a manufacturer's duty with respect to open and obvious risks:

> The manufacturer of a machine is under no duty to adopt a different design if the dangers to be avoided in the existing design, if any, are obvious and patent to all.

On appeal, plaintiffs object, as they did below, to the trial court's reading of this supplemental instruction because it was not a standard jury charge and because neither the facts in the instant case nor the law in Michigan warranted an open and obvious danger instruction. Plaintiffs argue that SJI2d 25.31 adequately stated the relevant law governing a manufacturer's duty in a case alleging design defects, and the open and obvious danger instruction was inapplicable.

In order for a trial court to give a requested jury instruction, sufficient evidence must be presented to warrant the instruction. *Bordeaux v Celotex Corp*, 203 Mich App 158, 169; 511 NW2d 899 (1993). A trial court may give an instruction not covered by the standard jury instructions as long as the instruction is applicable, accurately states the law, and is "concise, understandable, conversational, and nonargumentative . . . ." *Chmielewski v Xermac, Inc*, 216 Mich App 707, 713-714; 550 NW2d 797 (1996), aff'd 457 Mich 593; 580 NW2d 817 (1998); *Bordeaux, supra.* See MCR 2.516(D)(2) and (4).

In order to determine whether the trial court's open and obvious danger instruction was proper in this case, we must examine the current state of Michigan law governing a manufacturer's duty in cases alleging design defects. In Michigan, there are two theories that will support a finding of negligent design. *Gregory v Cincinnati Inc*, 450 Mich 1, 11; 538 NW2d 325 (1995). The first theory is based on a failure to warn. *Id.* The second, more traditional means of proving negligent design is premised on a defective design of the product at the time it left the manufacturer's control. *Id.* at 11-12. Although plaintiffs' complaint in this case alleged both theories, because the matter was submitted to the jury on the design defect theory, and because plaintiffs' claim of alleged instructional error relates solely to the design defect theory, our analysis will focus on that theory only.

As a general rule, "[a] manufacturer has a duty to design its product to eliminate 'any unreasonable risk of foreseeable injury.'" *Ghrist v Chrysler Corp*, 451 Mich 242, 248; 547 NW2d 272 (1996), quoting *Prentis v Yale Mfg Co*, 421 Mich 670, 693; 365 NW2d 176

(1984); *Bazinau v Mackinac Island Carriage Tours*, 233 Mich App 743, 757; 593 NW2d 219 (1999); *Mallard v Hoffinger Industries, Inc (On Remand)*, 222 Mich App 137, 141; 564 NW2d 74 (1997). The law imposes a greater responsibility on one who manufactures and designs a product because the manufacturer is especially knowledgeable about the product's capabilities and limitations as well as the foreseeability of harm. *Ghrist, supra* at 247. Further, the manufacturer is in the best position to effectuate the needed safety-related improvements. *Id.*

In *Fisher v Johnson Milk Co, Inc*, 383 Mich 158, 160-161; 174 NW2d 752 (1970), our Supreme Court, citing *Jamieson v Woodward & Lothrop*, 101 US App DC 32, 37; 247 F2d 23 (1957), established the open and obvious danger doctrine as a limit on a manufacturer's potential liability in products liability cases. Recognizing that the law does not require that an article be accident proof or incapable of causing harm, and that users of products must assume some responsibility for their conduct, the Court held that "[t]here is no duty to warn *or protect against* dangers obvious to all." *Fisher, supra* at 160 (emphasis added).

Subsequently, in *Owens v Allis-Chalmers Corp*, 414 Mich 413, 425; 326 NW2d 372 (1982), the Supreme Court limited its holding in *Fisher* to cases alleging design defects involving simple tools or products. A simple product is defined as "a simple thing of universally known characteristics, not a device with parts or mechanism, the only danger being not latent but obvious to any possible user . . . ." *Jamieson, supra* at 37. The *Mallard* Court noted that "the [*Owens*] Court stated that a manufacturer of *a simple product* is not required to design safety features to protect users

from dangers that are obvious and inherent in the utility of the product." *Mallard, supra* at 143 (emphasis added.) However, despite the *Owens* Court's apparent approval of the holding in *Fisher*, the *Owens* Court then stated that the obviousness of the risks that inhere in some simple tools or products was merely a factor in determining whether such products were unreasonably dangerous. *Owens, supra* at 425. "The test, however, is not whether the risks are obvious, but whether the risks were unreasonable in light of the foreseeable injuries." *Id.* The Court explained that some "[o]bvious risks may be unreasonable risks, and there is no justification for departing from general negligence . . . principles merely because the dangers are patent." *Id.* Thus, a careful reading of *Owens* reveals that a manufacturer in a case alleging design defects is not absolved of liability simply because the danger associated with the product (simple or nonsimple) is open and obvious.

Several years later, in *Glittenberg v Doughboy Recreational Industries (On Rehearing)*, 441 Mich 379, 399; 491 NW2d 208 (1992), a personal injury case involving a failure to warn of risks associated with an above-ground swimming pool, the Court held that there was no duty to warn of obvious dangers associated with a simple product. However, the *Glittenberg* Court expressly stated that with respect to a manufacturer's duty in cases alleging design defects, its holding "signal[ed] no retreat from *Owens*":

> Our jurisprudence recognizes the well-established rule that there is no duty to warn of dangers that are open and obvious. We have also narrowed application of the no-duty rule to those cases involving "simple tools or products." *We have rejected the proposition that the "open and obvious*

*danger" rule is an incantation that obviates the threshold
inquiry of duty in design defect cases. . . .*

In the design defect context, obvious risks may unreason-
ably breach the duty to adopt a design that safely and feasi-
bly guards against foreseeable misuse. Because the manu-
facturer's liability for choice of design is not determined
solely by looking at the obvious nature of the alleged
defect, obviousness of the danger does not preclude the
possibility that an alternative design could reduce the risk
of harm at a cost and in a manner that maintains the prod-
uct's utility. [*Id.* at 393-394 (emphasis added; citations
omitted).]

Although there has been some question whether the
above language from *Glittenberg* was dicta only, and
not controlling law, see *Mallard, supra* at 144, since
the *Glittenberg* opinion was released, at least two
panels of this Court have held that the open and obvi-
ous danger doctrine announced in *Fisher* and limited
to simple products in *Owens* does not eliminate the
design duty of a manufacturer, and that the obvi-
ousness of a danger is merely one factor in the analy-
sis of whether a design is unreasonable. See
*Boumelhem v Bic Corp*, 211 Mich App 175, 181; 535
NW2d 574 (1995); *Adams v Perry Furniture Co (On
Remand)*, 198 Mich App 1, 13; 497 NW2d 514 (1993).

Finally, in *Casey v Gifford Wood Co*, 61 Mich App
208; 232 NW2d 360 (1975), the plaintiff brought a
products liability action against the manufacturer of
an ice-crushing machine, alleging that the machine
was not reasonably fit for its intended use because it
was not equipped with guards. The trial court
instructed the jury that " '[i]f the manufacturer does
everything necessary to make a machine function
properly for the purpose for which it is designed, if
the machine is without any latent defect and if its

functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demand.' " *Id.* at 211, n 1. After reviewing the law governing a manufacturer's duty to design a safe product, this Court held that "the manufacturer of a product is not automatically relieved of the responsibility of providing safety devices merely because the danger causing the injury is obvious and patent . . . . The test of liability is no[t] . . . the latent-patent rule but whether the danger from which the plaintiff suffered injury was unreasonable and foreseeable." *Id.* at 217. This Court explained that instructions to the jury should not be couched in latent-patent terms and, in this regard, the trial court's instructions were erroneous. *Id.*

After a careful review of these cases, we conclude that, in cases alleging defective designs, in contrast to cases alleging a failure to warn, the focus of the inquiry is on the manufacturer's conduct, not just the product. See *Gregory, supra* at 13. In this regard, the manufacturer's duty at the time it designs the product is to eliminate any unreasonable risk of foreseeable injury. Once this duty is established, the factual inquiry presented to the trier of fact is whether the manufacturer exercised reasonable care in making the design choices it made at the time the product was created. The trier of fact must determine from the evidence whether the manufacturer knew or should have known of the design's propensity for harm at the time the product was designed to the extent that the manufacturer's conduct was unreasonable. *Id.* In deciding whether the manufacturer's conduct was reasonable, an examination of whether the alleged design defect was open and obvious at the

time the plaintiff was injured is relevant; however, the obviousness of a risk inherent in a product, alone, does not obviate the manufacturer's duty to avoid unreasonable risks and foreseeable injuries at the time the product is designed. In other words, the focus of the inquiry is on the manufacturer's knowledge of the product's potential to cause harm or injury and the foreseeability of such harm at the time the product is designed, not whether the defective design in the product was open and obvious. *Owens, supra.*

Turning to the facts of this case, we find that the jury instruction provided by the trial court pursuant to defendant's request was improper because it did not accurately relate the law regarding a manufacturer's duty in cases alleging design defects. In the course of its instructions, the trial court asked the jury to determine whether the manufacturer's failure to place adequate guards on the product created an unreasonable risk, but in the next sentence told the jury that if the product's dangers were obvious and patent, the manufacturer had no other duty to design its product to avoid such dangers. This portion of the instruction was in error. *Owens, supra* at 425; *Casey, supra* at 218.

We further note that the Comment to SJI2d 25.31 states that "[t]he test for assessing a manufacturer's liability to persons injured by its product is whether the risk to the plaintiff is unreasonable and foreseeable by the manufacturer, not whether the risk is patent or obvious to the plaintiff. *Owens* [*supra*]. For this reason, the instruction does not refer to obviousness." See also MCR 2.516(D)(3).

Finally, we note that even if the open and obvious danger doctrine did apply to obviate a manufacturer's duty in a case alleging defective design of a simple product, which we conclude it does not, we would not need to reach the open and obvious danger issue because there is no question that the palletizer machine at issue in this case was not a simple product. The palletizer was a large, complex, highly mechanized machine with four major automatic components and was capable of hoisting several hundred pounds off the ground. The machine contained a large number of mechanical parts, a separate electrical system, and required extensive training and education to understand its operation. In addition, although the machine functioned, in large part, automatically, it required a human operator to maintain proper operation. From these facts, we conclude that the palletizer was not "a simple thing of universally known characteristics," *Jamieson, supra* at 37, but was a highly mechanized and intricately complex machine. Because we find no legal authority to support defendant's position that the open and obvious danger doctrine should be extended to cases alleging design defects involving nonsimple products, the doctrine is inapplicable in this case.[1]

Therefore, having reviewed the instructions in their entirety and in conjunction with the testimony and

---

[1] Defendant cites a number of cases for the proposition that the open and obvious danger doctrine has been applied to cases alleging design defects involving nonsimple products; however, these cases are inapposite because they are all based on a manufacturer's duty to warn of open and obvious dangers and do not address application of the doctrine to cases alleging negligent design in which the duty to warn is not implicated. See *Wiegerink v Mitts & Merrill*, 182 Mich App 546; 452 NW2d 872 (1990); *Bullock v Gulf & Western Mfg*, 128 Mich App 316; 340 NW2d 294 (1983); *Bishop v Interlake, Inc*, 121 Mich App 397; 328 NW2d 643 (1982).

evidence presented at trial, we hold that the trial court abused its discretion in instructing the jury that defendant had no design duty if the identified risks were "obvious and patent" to all. We further hold that the trial court's erroneous instruction was not harmless error. In view of Lena's testimony at trial that she was aware of the dangers associated with the palletizer machine and that she knowingly reached inside the machine to clear the jammed pallet despite the apparent dangers, and the substantial expert testimony that the mesh guard was inadequate to protect operators from reasonably foreseeable harm and that the Plexiglass hinged door installed shortly after Lena's accident was both practical and economically feasible at the time the product was designed, it is entirely plausible that the jury relied on the erroneous open and obvious danger instruction in finding no cause of action. In this regard, we find that failure to vacate the verdict would be inconsistent with substantial justice. *Grow, supra* at 702. See *Casey, supra* at 217 (an instruction submitted to the jury relating an improper legal test warrants reversal). Accordingly, we reverse the judgment of no cause of action and remand for a new trial.[2]

---

[2] Defendant argues in its appellate brief that the trial court erred in failing to grant its motion for a directed verdict at the close of plaintiffs' proofs. However, this issue is not properly before us because an appellee is limited to the issues raised by the appellant unless the appellee files a cross appeal. *Beaudrie v Anchor Packing Co*, 231 Mich App 242, 254, n 6; 586 NW2d 96 (1998); *Barnell v Taubman Co, Inc*, 203 Mich App 110, 123; 512 NW2d 13 (1993). Because defendant did not file a cross appeal in this case challenging the trial court's denial of its motion for a directed verdict, we decline to consider that claim.

B. ADMISSION OF EVIDENCE

Plaintiffs also argue that the trial court erred in admitting evidence of plaintiff Nuo Cacevic's illegal entry into the United States and his subsequent use of a fictitious social security number for obtaining employment and filing tax returns. We agree. This evidence, while arguably minimally relevant to show the truthfulness of plaintiff Nuo Cacevic, was clearly unduly prejudicial to plaintiffs. MRE 403. Thus, to avoid further evidentiary error on remand, we direct the trial court to exclude on retrial all references to Nuo Cacevic's illegal alien status or his use of a fictitious social security number.

Reversed and remanded for action consistent with this opinion. We do not retain jurisdiction.

HOOD, J., concurred.

JANSEN, P.J. (*concurring*). I agree completely with the majority's analysis and conclusion with regard to the instructional error. I also agree that the trial court abused its discretion in admitting evidence of plaintiff Nuo Cacevic's illegal alien status and use of a fictitious social security number for obtaining employment and filing tax returns. However, I do not believe that this evidence could even be considered to be minimally relevant to any issue at trial.

Before trial, plaintiffs moved in limine to exclude all evidence relating to Nuo Cacevic's alien status and use of a fictitious social security number. Defendant argued that this evidence was relevant to the issue of damages and the credibility of plaintiffs.[1] The trial

---

[1] I note that Nuo Cacevic became a legal United States citizen in October 1992 and that the injury in this case occurred in September 1993.

court denied plaintiffs' motion, finding that the evidence was relevant with regard to plaintiffs' credibility. This case, however, was about whether defendant negligently designed and manufactured the palletizer machine on which Lena Cacevic suffered a serious hand and arm injury. The evidence of Nuo's alien status and use of a fictitious social security number is so prejudicial and completely irrelevant to this case that I can discern no reason for its admission other than to inflame the jury. Therefore, I find that the trial court clearly abused its discretion in admitting this evidence and agree with the majority that, on retrial, all reference to Nuo's alien status and his use of a fictitious social security number must be excluded.

I agree that the trial court's judgment in this case must be reversed and that the matter must be remanded for a new trial.