RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0192P (6th Cir.)
File Name: 04a0192p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

RANDY SWIX, PAMELA SWIX,
Co-Conservators of the Estate
of Aaron Ray Swix,
    *Plaintiffs-Appellants,*

    *v.*

DAISY MANUFACTURING CO.,
INC.,
    *Defendant-Appellee.*

No. 02-2154

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-70152—George E. Woods, District Judge.

Argued: March 11, 2004

Decided and Filed: June 23, 2004

Before: MARTIN, CLAY, and CUDAHY,[*] Circuit Judges.

---

[*] The Honorable Richard D. Cudahy, Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

---

## COUNSEL

**ARGUED:** Clark Shanahan, SHANAHAN & HOY, Owosso, Michigan, for Appellants. Jack O. Kalmink, CLARK HILL PLC, Detroit, Michigan, for Appellee. **ON BRIEF:** Clark Shanahan, SHANAHAN & HOY, Owosso, Michigan, for Appellants. Jack O. Kalmink, Paul C. Smith, CLARK HILL PLC, Detroit, Michigan, for Appellee.

---

## OPINION

---

RICHARD D. CUDAHY, Circuit Judge. Your mother refused to buy you a BB gun, warning that "you'll shoot your eye out." Apparently she was right to be concerned. Based on the facts of this case and a review of other cases on the topic, it seems that BBs are attracted to children's eyes as politicians are attracted to television cameras. After losing the use of one eye, Aaron Swix together with his parents brought this products liability action against Daisy, the manufacturer of the air rifle which was used to shoot him, alleging that the air rifle was defectively designed. The district court dismissed Swix's complaint. This appeal followed.

I

In May of 1999, Albert Carl Porrit purchased a Daisy Powerline 856 air rifle for his minor grandson, Nicholas Porritt. The air rifle was kept in a locked gun cabinet. On April 20, 2000, Nicholas, then age eleven, removed the loaded air rifle from the gun cabinet without permission. According to his affidavit, Nicholas took the safety lock off the gun and checked to see if the air rifle was empty. App. at

45. He then shook the rifle with the barrel facing down toward the floor. He pulled the bolt back and tilted the gun towards himself to see if there was a BB inside the rifle. He believed at this point that the rifle was empty. He subsequently pumped the rifle about five times and shot it at the floor. Only air came out. He then took the air rifle to the basement, pumping the rifle as he walked. When he got to the basement, he began to watch a movie and held the air rifle in his lap. Halfway through the movie, he picked up the air rifle, pointed it at his ten-year old friend Aaron Swix and "the air rifle went off." *Id.* According to the plaintiffs, the result was painful and permanent injury to Aaron Swix and virtually complete loss of sight in his left eye.

On January 14, 2002, Aaron Swix and his parents filed a products liability suit against Daisy Manufacturing Company, in the Eastern District of Michigan, seeking one million dollars and alleging claims of defective design and failure to warn of a known danger. In their amended complaint, the plaintiffs argued that "[t]he BB storage magazine in the model was dangerously and defectively designed [in that] . . . it allowed a BB to become lodged in the forward portion, between the barrel and interior of the outer barrel assembly . . . thus misleading the operator to believe . . . the air rifle, to be completely empty of BBs, [even after pumping and firing], when, in fact, a BB would still be present in the magazine." App. at. 8.

On March 14, 2002, Daisy filed a motion to dismiss the complaint arguing that a gun is a "simple tool" under Michigan law and the dangers of pointing it at another person are "open and obvious." On April 18, 2002, plaintiffs filed a motion for partial summary judgment on the issue of Daisy's liability but apparently they failed to file a timely memorandum in support. On August 14, 2002, the parties appeared at a telephonic hearing before Magistrate Judge Steven Pepe. At that hearing, Magistrate Judge Pepe granted the plaintiffs' motion to amend their complaint to include the allegation that "[d]efendant's primary marketing target (and

principle [sic] consumers) was/were children and young adults" and that "[t]he model was particularly dangerous and defective when placed in the hands of minor children." App. at 111, 113. The magistrate stated that "Defendant's motion to dismiss will apply to the amended complaint." App. at 113.

When the district court granted the defendant's motion to dismiss one week later, on August 22, 2002, however, it gave no indication that it was aware of the recent amendment to the complaint. App. at 14-23. In oral argument, the parties agreed that Judge Woods may have been unaware of the amendment at the time he granted the motion to dismiss. In the same order, Judge Woods denied plaintiff's motion for partial summary judgment as moot. This appeal followed.

## II

The parties do not dispute that Michigan state law applies in this diversity suit brought under 28 U.S.C. § 1332. The task of this Court, sitting in diversity, is to apply the same law as would be applied by Michigan state courts. *See Erie R.R. v. Tompkins,* 304 U.S. 64 (1938). Where a state's highest court has spoken to an issue, we are bound by that decision unless we are convinced that the high court would overrule it if confronted with facts similar to those before us. *See Bernhardt v. Polygraphic Co. of Am.,* 350 U.S. 198 (1956). Where a state appellate court has resolved an issue to which the high court has not spoken, "we will normally treat [such] decisions . . . as authoritative absent a strong showing that the state's highest court would decide the issue differently." *In re Akron-Cleveland Auto Rental, Inc.,* 921 F.2d 659, 662 (6th Cir. 1990).

The district court dismissed Swix's complaint in this case finding that he had failed to establish that Daisy owed Swix a duty of care. App. at 23. Under Michigan law, both a failure to warn claim and a defective design claim require a plaintiff to establish that the defendant owed him a duty of

care. *See Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000); *Kirk v. Hanes Corp. of North Carolina*, 16 F.3d 705 (6th Cir. 1994). There is also a defense under Michigan law to the duty requirement in a failure to warn and in a defective design claim known as the "simple tool rule." *See Fisher v. Johnson Milk Co., Inc.*, 383 Mich. 158, 174 N.W.2d 752 (Mich. 1970); *Kirk*, 16 F.3d at 705.

In *Fisher*, a failure to warn case, a milkman sold a patent attorney a wire carrier made to carry four half-gallon bottles of milk. *Id.* at 159. On arriving home from the market with his carrier containing four milk bottles, the attorney slipped on some ice in such a manner that the bottom of the carrier struck the sidewalk, causing the bottles to break. *Id.* at 160. He extended a hand in order to break his fall and his palm landed on a piece of broken bottle, severely injuring his hand. The attorney brought suit against the manufacturer of the wire carrier. The court in *Fisher* found that "a manufacturer owes no duty to warn of an open and obvious danger associated with the use of a simple [tool]." *Davis*, 226 F.3d at 511 (discussing *Fisher*). The parties do not dispute that this is a correct statement of law with respect to a failure to a warn claim.

A.  Is the "simple tool" rule an absolute defense to a defective design claim?

The parties do seem to disagree, however, whether the fact that a product is deemed a "simple tool" and the danger is "open and obvious" is an absolute defense to a defective design claim or whether the obviousness of a danger is merely one factor in the analysis of whether the risks are unreasonable in light of the foreseeable injuries. We agree with virtually every Michigan court which has opined on the matter, all of which have suggested that the obviousness of a danger is merely one factor in the analysis of whether the risks are unreasonable in light of the foreseeable injuries. *See, e.g., Owens v. Allis-Chalmers Corp.*, 414 Mich. 413, 425, 326 N.W.2d 372, 377 (Mich. 1982) ("As in *Fisher*, the

obviousness of the risks that inhere in some simple tools or products is a factor contributing to the conclusion that such products are not unreasonably dangerous. The test, however, is not whether the risks are obvious, but whether the risks were unreasonable in light of the foreseeable injuries"); *Cacevic v. Simplimatic Eng'g Co.*, 241 Mich. App. 717, 725, 617 N.W.2d 386, 390-92 (Mich. Ct. App. 2000), *vacated in part on other grounds*, 463 Mich. 997, 625 N.W.2d 784 (Mich. 2001) ("[A] manufacturer in a case alleging design defects is not absolved of liability simply because the danger associated with the product (simple or nonsimple) is open and obvious."); *Boumelhem v. BIC Corp.*, 211 Mich. App. 175, 181, 535 N.W.2d 574, 577-78 (Mich. Ct. App. 1995) (holding the same relying, *inter alia*, on *Owens* and *Glittenberg v. Doughboy Recreational Indus.*, 441 Mich. 379, 491 N.W.2d 208 (Mich. 1992)); *Adams v. Perry Furniture Co.*, 198 Mich. App. 1, 14, 497 N.W.2d 514, 520 (Mich. Ct. App. 1993) ("The test in design defect cases concerning simple tools is whether the risks are unreasonable in light of the foreseeable injuries."), *overruled on other grounds by Allied Elec. Supply Co., Inc. v. Tenaglia*, 461 Mich. 285, 602 N.W.2d 572 (Mich. 1999); Restatement (Third) of Torts: Prod. Liab. § 2 (1998) (noting that "[a] strong majority of courts [including Michigan in *Owens*] have rejected the 'open and obvious' . . . rule as an absolute defense . . .[and] [a]cademic commentators have been almost unanimous in their criticism of the . . . rule."). The Supreme Court of Michigan has explained why obvious dangers should be treated differently in the design defect context than in the failure to warn context. *See Glittenberg*, 441 Mich. at 394, 491 N.W.2d at 215. In *Glittenberg*, the Court explained:

> In the design defect context, obvious risk may unreasonably breach the duty to adopt a design that safely and feasibly guards against foreseeable misuse. Because the manufacturer's liability for choice of design is not determined solely by looking at the obvious nature of the alleged defect, obviousness of the danger does not preclude the possibility that an alternative design could

reduce the risk of harm at a cost and in a manner that maintains the product[’s] utility.

In the failure to warn context, the obvious nature of the simple product's potential danger serves the core purpose of the claim, i.e., it functions as an inherent warning that the risk is present.   Stated otherwise, if the risk is obvious from the characteristics of the product, the product itself telegraphs the precise warning that plaintiffs complain is lacking.

*Id.* (citations omitted).  In other words, there is no need to warn of a danger where the danger is obvious, but in a design defect case, the court must also consider whether a manufacturer should have created the danger in the first place. For instance, the danger associated with a rag-doll with steak knives for arms ("Steak Knife Sally") may be quite obvious, but it is equally clear that the risks associated with such a design choice far outweigh the utility.

Our opinion in *Kirk* is in accord.  *See* 16 F.3d 705.  In *Kirk*, we were not asked to decide whether the fact that a danger is "open and obvious" is an absolute defense to a defective design claim or whether the obviousness of a danger is merely one factor in the analysis of whether the risks are unreasonable in light of the foreseeable injuries.  Instead, the question presented to this Court was whether the "simple tool rule" applies in design defect cases at all.  *Id.*

Nonetheless, in deciding whether the simple tool rule applies to design defect cases, our discussion provided insight into the question whether the open and obvious nature of a danger is merely one factor to be considered or is dispositive. *Id.* Specifically, our opinion addressed whether *Fisher*, which was argued to have established the rule that the obviousness of a danger is dispositive, was overruled by *Prentis v. Yale Manufacturing Co.*, 421 Mich. 670, 365 N.W.2d 176 (Mich. 1984), which was argued to have replaced the dispositive rule with a multi-factor "reasonableness" analysis.  *Id.*  We

concluded that *Prentis* was actually consistent with *Fisher* and that *both* cases found that the obviousness of the danger was simply one factor in the reasonableness analysis.  *Id.* at 708 ("Even though *Fisher* was decided prior to *Prentis*, it also applied a 'pure negligence' standard . . . . While the risks that glass bottles will break or that broken glass might injure someone are inarguably *foreseeable*, the court [in *Fisher*] determined that such risks, as a matter of law, were not *unreasonable* given the obvious nature of the danger and the simple nature of the product.") (emphasis in original).  *Kirk* then applied the same reasonableness test of *Prentis* and *Fisher* to a Bic lighter to conclude that no jury— "in light of the fact that the danger of lighters is obvious to their intended users—could find that these lighters pose an *unreasonable* risk of harm." *Id.* at 710 (emphasis in original).  Therefore, *Kirk* suggests that the test is not simply whether the danger is "open and obvious," but instead whether the risks were unreasonable in light of the foreseeable injuries.  *Id.* at 709 ("Were we to reject *Fisher* and *Adams,* as Kirk argues, we would have to hold that the determination of whether a particular design presents an unreasonable risk of foreseeable injury may *never* be resolved by the court on summary judgment."); *see also id.* at n.5.[1]

Daisy argues that the "open and obvious" nature of a danger is dispositive based on *Mallard v. Hoffinger Industries Inc.*, 222 Mich. App. 137, 564 N.W.2d 74 (Mich. Ct. App.

---

[1] We note that there is a great deal of confusion in the language of many opinions, including *Kirk*, which have bearing on the question whether the simple tool rule is dispositive or whether a reasonableness analysis applies. We believe that this confusion has been created, in part, because courts have conflated this question with the separate and potentially independent question of whether such cases can be decided as a matter of law.  If each question is considered separately, however, it appears that there is not much disagreement.  As will be discussed, it is clear that a reasonableness analysis applies but that the nature of this analysis will not prevent a design defect claim from being decided as a matter of law where reasonable minds could not disagree as to the outcome.

1997).[2] We find the reasoning of *Mallard*, however, to be unpersuasive. In *Mallard*, the Court discounted the guidance of the Michigan Supreme Court, noting that "[w]hile we agree with plaintiffs that the Supreme Court's language in *Glittenberg* appears to suggest that the open and obvious nature of the danger will not preclude any design defect claims, we conclude that the Court was discussing general principles of design defect claims and not their applicability to simple products." *See Mallard*, 222 Mich. App. at 142, 564 N.W.2d at 77. We are at a loss to see how the court in *Mallard* could find that the Supreme Court was excluding simple products from its discussion of design defect claims, given that it held that "[i]n the design defect context, *obvious risk* may unreasonably breach the duty to adopt a design that safely and feasibly guards against foreseeable misuse . . . [while][i]n the failure to warn context, the *obvious nature of the simple product's* potential danger serves the core purpose of the claim." *Glittenberg*, 441 Mich. at 394, 491 N.W.2d at 215 (quoted in full *supra* at ____).[3] *Mallard* also discounts

---

[2] Judge Kelly, in his concurrence in *Mallard*, supported the view that a "reasonableness" analysis should be applied in design defect cases involving simple tools. *See Mallard*, 222 Mich. App. at 145, 564 N.W.2d at 78 (Kelly, J., concurring). Judge Kelly stated, "I write separately because I question the analysis in *Fisher*. Even where the product is a simple one, a manufacturer should be held to a standard of reasonable care. The obviousness of the risk is only one factor that should be considered." *Id.*

[3] *Mallard* argues that the court in *Glittenberg* could not be endorsing a reasonableness analysis in design defect cases, despite its clear language, because it expressly noted that its holding was not a departure from *Owens*. *Mallard*, 222 Mich. App. at 142, 564 N.W.2d at 77. The significance of this fact is baffling given that *Owens* found that the applicable test is "whether the risks were unreasonable in light of the foreseeable injuries." *Owens*, 414 Mich. at 425, 326 N.W.2d at 377. *Mallard*'s response to our criticism is that the court in *Owens* too could not be endorsing a reasonableness analysis in design defect cases, despite its arguably even clearer language, because it expressly ratified *Fisher*. *Mallard*, 222 Mich. App. at 142 n.5, 564 N.W.2d at 77 n.5. However, *Fisher* involved a failure to warn claim rather than a design defect claim

the relevant discussion in *Owens* and *Glittenberg* as dicta. *Mallard*, 222 Mich. App. at 141-43, 564 N.W.2d at 77-78. As we have held, dicta can be of value in determining state law. *See Kirk*, 16 F.3d at 709. This is especially true here, where we have strong dicta from a variety of Michigan courts, including the state's highest court, all making the same point. Finally, we note that *Mallard* was decided prior to *Cacevic* and without any apparent consideration of *Boumelhem*.

Therefore, for the reasons discussed *supra*, we find that the fact that a product may be a "simple tool" is not dispositive in a design defect case—the obviousness of a danger is merely one factor in the analysis of whether the risks are unreasonable in light of the foreseeable injuries. The fact that a multi-factor analysis may be involved, however, will not prevent a defective design claim involving a simple tool from being decided as a matter of law where reasonable minds could not differ as to the outcome. *See Kirk*, 16 F.3d at 709 (noting the appropriateness of summary judgment "where the facts were clear and [there was] no genuine dispute as to the reasonableness of the manufacturer's conduct"); *Glittenberg*, 411 Mich. at 398-99, 491 N.W.2d at 217 (noting, in the context of a failure to warn claim, that a jury must consider the obviousness of the risk only "if reasonable minds could differ" with respect to the outcome); *Boumelhem*, 211 Mich. at 183, 535 N.W.2d at 578 (noting the propriety of the risk-utility test but affirming grant of summary judgment under the circumstances); *Adams*, 198 Mich. App. at 14, 497 N.W.2d at 520 (same); Restatement (Third) of Torts: Prod. Liab. § 2 (1998) ("A court may direct a verdict when it is convinced that, given the obviousness of the danger, it is not reasonable to require the adopting of an alternative design.").

---

and in any case, as our discussion of *Kirk* demonstrates, *Fisher* is not inconsistent with the reasonableness analysis discussed in *Owens*. *See supra* at ____. Therefore, we find that the chain of tenuous inferences *Mallard* uses to discount the clear language of the Michigan Supreme Court is unpersuasive.

In sum, whether the danger associated with a simple tool is "open and obvious" will determine whether a manufacturer owes a duty to warn and is also an important factor in deciding a design defect claim. This inquiry requires us to address two questions. First, is a Daisy air rifle a "simple tool" under Michigan law? Second, if so, is the danger alleged to be associated with a Daisy air rifle "open and obvious"?

B.   Is an air rifle a "simple tool"?

Michigan caselaw does not provide a clear test for determining whether a product is a "simple tool." However, the courts have categorized products as simple tools when one or both of the following conditions exist: (1) the products are not highly mechanized, thus allowing the users to maintain control over the products; (2) the intended use of the products does not place the users in obviously dangerous positions. *Davis*, 226 F.3d at 511-12. For example, courts have found hammers, knives, gas stoves, axes, buzz saws, propeller driven airplanes, trampolines and backyard pools to be simple tools. *Id.* We have also found guns to be simple tools. *Id.*; *see also Treadway v. Smith & Wesson Corp.*, 950 F. Supp. 1326, 1335-36 (E.D. Mich. 1996) (holding that a .38 caliber revolver is a simple tool). As far as we are aware, no Michigan court has specifically considered whether an air rifle or BB gun, as opposed to a firearm, is a "simple tool." Fortunately, this is the easier of the two questions which we must answer. Swix does not argue that an air rifle is more "highly mechanized" than other guns. Similarly, the intended use of an air rifle does not appear to place the user in a significantly different position than users of firearms. In short, Swix's complaint does not even attempt to distinguish an air rifle from a firearm in any way relevant to the determination of whether it is a "simple tool." Although Swix argues that an air rifle can mislead the operator into believing it is empty when it is actually loaded, we have noted the same to be true of a firearm. *See Davis*, 226 F.3d at 512. Therefore, we agree with the district court that Swix has

failed to demonstrate that an air rifle is anything but a "simple tool."

C.   Is the danger alleged here to be associated with a Daisy air rifle "open and obvious"?

The second question, whether the danger associated with a Daisy air rifle is "open and obvious," is more difficult. In answering this question, "[t]he focus is the *typical user's* perception and knowledge of whether the relevant condition or feature that creates the danger associated with use is fully apparent, widely known, commonly recognized, and anticipated by the *ordinary user or consumer*." *Glittenberg*, 411 Mich. at 391-92, 419 N.W.2d at 213 (emphasis added); *Adams,* 198 Mich. App. at 12-13, 497 N.W.2d at 519 (same); *Kirk*, 16 F.3d at 710 (finding that the danger of lighters is obvious "to their intended users"); Prosser & Keeton, Torts, § 96, 686-87 (5th ed. 1984) ("[C]ourts have usually meant by 'obvious danger' a condition that would ordinarily be seen and the danger of which would ordinarily be appreciated by those who would be expected to use the product.").

In this case, Swix amended his complaint one week before the district court granted Daisy's motion to dismiss to allege that "[d]efendant's primary marketing target (and principle [sic] consumers) was/were children and young adults." App. at 111, 113. In essence, Swix has alleged that the typical or intended users of the Daisy air rifle are children.[4] We believe that the district court was unaware of this amendment at the time it granted the defendant's motion to dismiss, which may explain its holding.

This allegation is crucial in that it distinguishes this case from every Michigan case which holds that the dangers

---

[4]According to the affidavit of William F. Kitzes, Swix's expert, a September 1975 study commissioned by Daisy found that the median age of purchasers of Daisy Power Line guns was twelve years old. App. at 91.

associated with guns or other products intended for adults were "open and obvious." These cases all applied an "objective reasonable adult standard," not because it was an adult who was using the product which caused injury, but because the product in question was intended for and typically used by adults. *See Treadway*, 950 F. Supp. at 1336 (applying an "objective and reasonable *adult* standard" in a products liability case involving a gun); *Adams*, 198 Mich. App. at 13, 497 N.W.2d at 519 ("Notwithstanding Bic's acknowledgment that it was foreseeable . . . that lighters could get into and were getting into the hands of children, *the typical user of a lighter is an adult*."); *Kirk*, 16 F.3d at 710 (noting that lighters are "manufactured for and sold to, adult users . . . . [In contrast,] [a] manufacturer who bypasses adults, upon whom the law ordinarily places responsibility, and markets a simple, but dangerous, tool directly to children may not avoid liability on the ground that the child 'should have known better.'").

If the typical user of a Daisy air rifle is a child, which we must presume to be true on a motion to dismiss, an objective reasonable child standard must apply. *See Kirk*, 16 F.3d at 710; *Moning v. Alfono*, 400 Mich. 425, 448-49, 254 N.W.2d 759, 769 (Mich. 1977) ("One has no right to demand of a child, or of any other person known to be wanting in ordinary judgment or discretion, a prudence beyond his years or capacity."); *Sherk v. Daisy-Heddon*, 285 Pa. Super. 320, 427 A.2d 657 (Pa. Super. Ct. 1981) (applying a reasonable child standard to a products liability case involving a Daisy air rifle), *vacated on other grounds*, 498 Pa. 594, 450 A.2d 615 (Pa. 1982); *Fleck v. KDI Sylvan Pools, Inc.,* 981 F.2d 107, 119 (3d Cir. 1992) (applying *Sherk*); *cf. Mallard v. Hoffinger Indus., Inc.,* 210 Mich. App. 282, 286, 533 N.W.2d, 13 (Mich. Ct. App. 1995), *vacated in part on other grounds*, 451 Mich. 884, 549 N.W.2d 573 (Mich. 1996) ("Because the determination of the obvious nature of the danger is an objective one that focuses on the typical pool user . . . we are unable to distinguish this case from *Glittenberg* on the basis of the victim's age."); Restatement (Third) of Torts: Prod.

Liab. § 2 (1998) ("In some contexts, products intended for special categories of users, such as children, may require more vivid and unambiguous warnings."). "The test to determine whether a danger is obvious is an objective one, not dependent upon the actual knowledge of the user, or his actual awareness of the danger. It is the knowledge and realization of the danger that would be possessed by the ordinary consumer who purchases or uses the product . . . . If the product is one customarily used by children, the danger must be one which children would be likely to recognize and appreciate in order to prevent them from recovering for a product related injury on the grounds that the danger was open and obvious." W. Kimble & R. Lesher, Products Liability § 196 (1979).

Therefore the question presented here is whether the reasonable child of whatever age the typical user of a Daisy air rifle is determined to be would know that it would be dangerous to aim the rifle at another and click the trigger, even after going through the process of emptying and testing the rifle that Porritt allegedly went through in this case. Given that this question has not yet been answered by any Michigan court and given that reasonable minds could differ as to the answer, we believe this question is not particularly appropriate for determination as a matter of law.[5] *See, e.g.,*

---

[5] Daisy also makes the argument that it had no duty to warn in this case as a matter of law, based on *Mallard*, in which the court mentioned that "if a child is capable of understanding a warning, the dangerous condition would be obvious to the child, rendering the warning unnecessary." 210 Mich. App. at 285-86, 533 N.W.2d at 2; Opp. Br. at 20-21. This argument is without merit. The court in *Mallard* did not establish a general rule that there is no duty to warn children. The point *Mallard* was making was context specific. In *Mallard*, a young child dived into a pool and hit his head on the bottom. The court apparently believed that the danger was so open and obvious in that case that any child old enough to understand the warning would necessarily be capable of perceiving the danger on his own. In contrast, it is quite possible that a twelve year old might not understand that an "empty" BB gun could still discharge without an actual warning to such effect. In any case, given

*Glittenberg*, 411 Mich. at 399, 491 N.W.2d at 217 ("If . . . the court determines that reasonable minds could differ, the obviousness of the risk must be determined by the jury."); *Moning*, 400 Mich. at 447, 254 N.W.2d at 769 ("The issue whether the defendants are subject to liability cannot properly be taken from the jury on the supposition that an 11 year old boy knows how a slingshot operates and therefore appreciates the risk."); *Crist v. Art Metal Works*, 230 A. D. 114, 117, 243 N.Y.S. 496, 499 (N.Y. App. Div. 1930), *aff'd by,* 255 N.Y. 624, 175 N.E. 341 (1931) ("A product designed to be used by adults who may be expected to exercise care may not be dangerous, but when intended to be placed in the hands of inexperienced children who may seek to enlarge their knowledge by experimentation of various and sometimes unexpected character, it may be a source of peril.") (quoted by *Moning*).[6]

Finally, though it might conceivably support a comparative negligence defense, the fact that Daisy intended that its air rifle be used under the direct supervision of an adult and that Swix's grandfather had the same rule does not alter the "reasonable child standard" that applies in this case. *See Farm Bureau Ins. Group v. Phillips*, 116 Mich. App. 544, 323

---

that the typical user of a pool is not a young child, the court in *Mallard* applied a reasonable adult standard and therefore the case is not applicable here. *Id*. at 13.

[6] We note that in *Menard v. Newhall*, 135 Vt. 53, 55, 373 A.2d 505, 507 (Vt. 1977), the court stated: "A BB gun which is neither defectively designed nor manufactured is not dangerous beyond that which would be contemplated by the ordinary consumer with the ordinary knowledge common to the community. A warning by the defendant Daisy that a BB gun, if fired at a person, could injure an eye, is nothing that even a seven-year-old child does not already know." *Id*. However, in *Menard*, there was no allegation that the air rifle was defectively designed nor was it argued that the child who fired the gun was under any misapprehension about whether the gun would discharge. The plaintiff was simply arguing in that case that Daisy should have provided a warning that the gun was dangerous.

N.W.2d 477, 549-50 (Mich. Ct. App. 1982). In *Farm Bureau*, the court noted that in negligence cases involving children, the reasonable child standard would apply unless the child is engaged in an adult activity. *Id.* at 477, 547. The defendant argued that starting camp fires was an adult activity because it generally requires adult supervision and the child involved was told that he had to be supervised. *Id.* at 479, 549-50. The court declined, however, to depart from the usual standard, noting that many activities should be done with adult supervision, but this does not make them adult activities. *Id.* at 479, 550. Similarly, while there is no question that an air rifle *should* be used with adult supervision, the complaint alleges that the typical user of a BB gun is a child, so that is the standard the district court must apply.

Moreover, a manufacturer has a duty to protect against foreseeable misuses. *Moning*, 400 Mich. at 439; 254 N.W.2d at 765; *Bordeax v. Celotex Corp.*, 203 Mich. App. 158, 167, 511 N.W.2d 899, 905 (Mich. Ct. App. 1993). It is certainly foreseeable that a twelve year old child will on occasion use a BB gun which was purchased for his use, without direct supervision, or that any supervision will be inadequate to protect against a split-second decision by the minor to aim at another. *See, e.g., Moning*, 400 Mich. at 439, 254 N.W.2d at 765 ("A manufacturer, wholesaler and retailer of slingshots can be expected to foresee that they will be used to propel pellets and that a person within range may be struck.").

### III

Therefore, for the reasons discussed *supra*, we reverse the district court's grant of defendant's motion to dismiss and remand this case to the district court for further proceedings not inconsistent with this opinion.