NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0407n.06

**No. 17-2528**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 14, 2018
DEBORAH S. HUNT, Clerk

ROBERT KAMINSKI,

      Plaintiff-Appellant,

v.

THE LIBMAN COMPANY,

      Defendant-Appellee.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF
MICHIGAN

BEFORE:    SUHRHEINRICH, CLAY, and GIBBONS, Circuit Judges.

**CLAY, Circuit Judge.**  In this diversity action brought under 28 U.S.C. § 1332, Plaintiff Robert Kaminski sued Defendant The Libman Company under Michigan state law, arguing that a grill brush manufactured by Defendant lacked necessary warnings and was defectively designed. The district court granted summary judgment for Libman, and Kaminsky appealed. For the reasons set forth below, we **AFFIRM** the district court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

In July 2013, Kaminski purchased a stainless steel grill brush manufactured by Libman. To clean his grill, he would run the brush back and forth over the hot grates for 10 to 30 seconds.

According to Kaminski, he would put minimal pressure on the brush and never noticed any steel bristles fall off during the brushing process.

In May 2014, Kaminski sought medical treatment for "abdominal bloating" that had been "worsening for the past few months[.]" (R. 66, opposition to summary judgment with exhibits, PageID# 422.) A CT scan revealed that he had ingested a "metallic foreign body resembling a thin copper wire," probably from a "wire brush related to grilled meat." (*Id*. at 424.) Kaminsky had surgery, and the metal wire was removed. However, the wire was thrown away before it was examined; Kaminski never even saw it. It appears that Kaminski did not ask the surgeons to save the wire.

In February 2016, Kaminski sued Libman in the district court. As relevant here, he raised two product liability claims under Michigan state law: (1) a failure-to-warn claim, based on Libman's failure to attach a warning label to the brush indicating that bristles could fall off during use; and (2) a breach-of-implied-warranty claim, based on the alleged defective design of the brush. In support of his failure-to-warn claim, Kaminski produced evidence that at least two other users of Libman's brushes had been injured after ingesting a bristle. In support of his breach-of-implied-warranty claim, Kaminski cited testimony from a metallurgical expert who opined that the brush would have been safer had it used a different type of stainless steel, or a different method of securing bristles to the handle. The expert did not testify as to the cost-effectiveness of any alternative designs.

In August 2017, Libman moved for summary judgment. The district court held a hearing on the motion and, in an oral ruling, granted summary judgment for Libman. With respect to the failure-to-warn claim, the district court determined that the brush was a simple tool that did not

require any warnings. With respect to the breach-of-implied-warranty claim, the district court performed a "risk utility" test and determined that the brush was not unreasonably dangerous. The court noted that Kaminski had cited only two other instances in which bristles from Libman's brushes had caused injuries, a remarkably low number considering that Libman had sold "millions" or even "tens of millions" of brushes throughout its history. (R. 75, hearing transcript, PageID# 702–03.)

Kaminski timely appealed the judgment. In his brief, he argues that the grill brush was not a "simple tool" for purposes of his failure-to-warn claim and that the district court should not have performed a "risk utility" test when analyzing his breach-of-implied-warranty claim.

## DISCUSSION

### Standard of Review

This Court reviews *de novo* the district court's grant of summary judgment. *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When evaluating a summary judgment motion, the reviewing court must construe the facts in the light most favorable to the non-movant." *Gillis*, 845 F.3d at 683.

### Analysis

Kaminski argues that his failure-to-warn and breach-of-implied-warranty claims should have gone to a jury. We consider each claim in turn.

## A.       Duty to Warn

In Michigan, "[m]anufacturers have a duty to warn purchasers or users of dangers associated with the intended use or reasonably foreseeable misuse of their products[.]" *Glittenberg v. Doughboy Recreational Indus.*, 491 N.W.2d 208, 211–12 (Mich. 1992).  However, "the scope of the duty is not unlimited." *Id.*  For example, "a manufacturer owes no duty to warn of an open and obvious danger associated with the use of a simple tool." *Swix v. Daisy Mfg. Co.*, 373 F.3d 678, 682 (6th Cir. 2004) (alterations omitted) (quoting *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000)).  Accordingly, the inquiry in the instant case is straightforward.  First, we ask whether the grill brush is a "simple tool" under Michigan law. *Id.* at 685.  If the answer is "yes," we then ask whether the danger associated with the brush is "open and obvious." *Id.*  A danger is "open and obvious" if it is "readily apparent or easily discoverable upon casual inspection by the average user of ordinary intelligence." *Glittenberg*, 491 N.W.2d at 214–15.

Michigan courts have categorized products as simple tools "when one or both of the following conditions exist: (1) the products are not highly mechanized, thus allowing the users to maintain control over the products; (2) the intended use of the products does not place the users in obviously dangerous positions." *Swix*, 373 F.3d at 685.  Both requirements are met here.  First, a grill brush is not mechanized and is controlled entirely by the user.  Second, a grill brush does not put the user in obviously dangerous positions.  Certainly, a grill brush is less dangerous than many other items that qualify as "simple tools." *See id.* ("[C]ourts have found hammers, knives, gas stoves, axes, buzz saws, propeller driven airplanes, trampolines and backyard pools to be simple tools.").  Accordingly, a grill brush is a simple tool.

Next, we ask whether the danger associated with a grill brush is "open and obvious" to a reasonably prudent person.  In answering this question, we consider whether it is "readily apparent

or easily discoverable," *see Glittenberg*, 491 N.W.2d at 214–15, that the bristles on a grill brush could break off and fall into food. Although this issue is closer, we believe this danger is "open and obvious." Most people have experience using all types of brushes, from paintbrushes and toothbrushes to hairbrushes. Given that brushes are ubiquitous and extremely simple, a reasonably prudent person would realize that the bristles on a grill brush are not indestructible. There is always a risk, however small, that bristles will break or become dislodged. Kaminski himself recognized this risk, stating in a deposition that he "imagined" that, due to wear and tear, a grill brush would eventually "lose its bristles." (R. 64-2, Kaminski deposition, PageID# 366.) To the extent Kaminski argues that the bristles on Libman's grill brush were unreasonably weak, that argument touches on the next issue addressed in this opinion: whether the brush was defectively designed. It has no bearing on whether the risk posed by the brush was "open and obvious."[1]

## B. Breach of Implied Warranty

The Michigan Supreme Court provided a framework for analyzing breach-of-implied-warranty claims in *Prentis v. Yale Manufacturing Co.*, 365 N.W.2d 176 (Mich. 1984). As relevant here, the court held as follows:

> Like the courts in every other state, whether a suit is based upon negligence or implied warranty, we require the plaintiff to prove that the product itself is actionable—that something is wrong with it that makes it dangerous. This idea of "something wrong" is usually expressed by the adjective "defective" and the plaintiff must, *in every case, in every jurisdiction*, show that the product was defective.

---

[1] Kaminsky's brief failed to meaningfully address the "open and obvious" inquiry. Accordingly, at oral argument, we repeatedly asked Kaminsky's counsel to provide a reason why the dangers posed by a grill brush should not be considered "open and obvious." Counsel could not give an answer. In addition, while counsel suggested that the "open and obvious" inquiry may be inapplicable, that is simply incorrect. *See Swix*, 373 F.3d at 685 ("[W]hether the danger associated with a simple tool is 'open and obvious' will determine whether a manufacturer owes a duty to warn[.]").

*Id.* at 181–82 (emphasis in original). Where the plaintiff argues that the product was defectively designed (rather than defectively manufactured), the factfinder must perform a "risk-utility test." *Id.* at 186. This test "invite[s] the trier of fact to consider the alternatives and risks faced by the manufacturer and to determine whether in light of these the manufacturer exercised reasonable care in making the design choices it made." *Id.* at 184. In 1996, the Michigan legislature passed a statute confirming that a risk-utility test applies in all product liability actions:

> In a product liability action brought against a manufacturer or seller for harm allegedly caused by a production defect,[2] the manufacturer or seller is not liable unless the plaintiff establishes that the product was not reasonably safe at the time the specific unit of the product left the control of the manufacturer or seller and that, according to generally accepted production practices at the time the specific unit of the product left the control of the manufacturer or seller, a practical and technically feasible alternative production practice was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users and without creating equal or greater risk of harm to others. An alternative production practice is practical and feasible only if the technical, medical, or scientific knowledge relating to production of the product, at the time the specific unit of the product left the control of the manufacturer or seller, was developed, available, and capable of use in the production of the product and was economically feasible for use by the manufacturer. Technical, medical, or scientific knowledge is not economically feasible for use by the manufacturer if use of that knowledge in production of the product would significantly compromise the product's usefulness or desirability.

Mich. Comp. Laws § 600.2946(2).

In the instant case, the district court applied a risk-utility test and determined that the design of the grill brush was not unreasonably dangerous. On appeal, we might have expected Kaminski to challenge that conclusion. But remarkably, Kaminski has taken a different route: he argues that

---

[2] "Production" is defined as "manufacture, construction, *design*, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling." Mich. Comp. Laws § 600.2945(i) (emphasis added).

a risk-utility analysis should not have been performed *at all*. According to Kaminski, Michigan law "supports a claim for breach of implied warranty where the manufacturer of a product did not negligently design or manufacture it or fail to issue proper warnings[.]" (Plf.'s Br. at 9.)

Kaminski is simply wrong. The Michigan Supreme Court in *Prentis* could not have been clearer: it held that in a product liability action, the plaintiff "must, *in every case, in every jurisdiction*, show that the product was defective." *Prentis*, 365 N.W.2d at 181–82 (emphasis in original). It further held that "we adopt, forthrightly, a pure negligence, risk-utility test in products liability actions against manufacturers of products, where liability is predicated upon defective design." *Id*. at 186. This framework was subsequently codified at Mich. Comp. Laws § 600.2946(2). Consequently, the district court was correct to apply a risk-utility test.[3]

It appears that Kaminski's confusion stems from his reading of two cases written by the same district court judge: *Sundberg v. Keller Ladder*, 189 F. Supp. 2d 671 (E.D. Mich. 2002), and *Fleck v. Titan Tire Corp.*, 177 F. Supp. 2d 605 (E.D. Mich. 2001). In both of those cases, the district judge correctly stated that, to prevail on a breach-of-implied-warranty claim, the plaintiff must prove that the product was defective. *See Sundberg*, 189 F. Supp. 2d at 676 (recognizing that the plaintiff must show that "the product in question was . . . defective"); *Fleck*, 177 F. Supp. 2d

---

[3] Kaminski points out that technically, his design-defect claim is not based on negligence, but on breach of implied warranty. (Plf.'s Br. at 9.) That is true, but irrelevant. As explained in *Prentis*, both theories converge when the defendant is the manufacturer because "recovery under either theory require[s] the jury to determine that the [product] was defectively designed[.]" 365 N.W.2d at 187. This Court has repeatedly made this clear. *See Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 736–37 (6th Cir. 2000) ("[I]n cases where a seller is also the manufacturer, Michigan courts have observed that claims of negligence and breach of implied warranty are, for all intents and purposes, identical."); *Peak v. Kubota Tractor Corp.*, 559 F. App'x 517, 524 (6th Cir. 2014) ("Although breach of implied warranty and design defect are distinct theories of recovery, 'in an action against the manufacturer of a product based upon an alleged defect in its design, breach of implied warranty and negligence involve identical evidence and require proof of exactly the same elements.'" (quoting *Prentis*, 365 N.W.2d at 186)).

at 621 (same). Yet later in each opinion, the district judge made broad statements suggesting that a plaintiff can prevail without proving a defect. *See Sundberg*, 189 F. Supp. 2d at 678 (stating that a plaintiff can prevail "even if none of the three types of 'defects' (i.e. design, manufacture or warning) could support the jury's finding"); *Fleck*, 177 F. Supp. 2d at 621–22 (stating that "a product could be 'defective' without having a traditional 'defect' in the product liability sense"). To the extent these broad statements are taken literally, they are incorrect. As explained above, a plaintiff in a breach-of-implied-warranty claim must show "that the product was sold in a defective condition[.]" *Hollister*, 201 F.3d at 737. To that end, the plaintiff must prove either defective manufacture or defective design, which may include a failure to warn. *See Prentis*, 365 N.W.2d at 182 (explaining that a product can be defectively manufactured or defectively designed); *Gregory v. Cincinnati Inc.*, 538 N.W.2d 325, 328–29 (Mich. 1995) (explaining that a design can be defective for failure to include proper warnings). In the instant case, Kaminski does not argue that the grill brush was defectively manufactured. In addition, we have already determined that there was no failure to warn. That leaves only a claim for defective design. Under *Prentis*, and as codified in Mich. Comp. Laws § 600.2946(2), a claim based on defective design necessarily requires a risk-utility analysis.

Given that the district court was correct to apply the risk-utility test, the only remaining question is whether it applied that test appropriately. However, at oral argument, Kaminsky's counsel conceded that the risk-utility test had not been satisfied. In light of this express admission, our hands are tied. We are compelled to conclude that the district court properly granted summary judgment on Kaminsky's breach-of-implied-warranty claim.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.