# STATE OF MICHIGAN

# COURT OF APPEALS

DONALD KRUPINSKI,

       Plaintiff-Appellant,

v

DONALD A. NITKIN and LAURA R. NITKIN,

       Defendants,

and

COSTCO WHOLESALE CORPORATION,

       Defendant-Appellee.

UNPUBLISHED
December 17, 2015

No. 321780
Macomb Circuit Court
LC No. 2011-002924-NI

Before: SERVITTO, P.J., and WILDER and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition to defendant, Costco Wholesale Corporation, pursuant to MCR 2.116(C)(10).[1] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant operates a chain of members-only warehouse clubs. Some warehouse locations also provide gasoline stations. Plaintiff was fueling his vehicle at the gas station at defendant's Shelby Township location. Unlike many self-service gas stations, this station allowed customers to drive to and away from the gas pumps in one direction only. Thus, vehicles would form queues on one side of each pump island to wait for an available pump. Each island had a forward pump and a rear pump. Vehicles queuing for pumps wait behind a 10-inch wide stop line painted on the pavement six feet from the rear pump, creating a buffer zone

---

[1] Plaintiff's claims against defendants Donald Nitkin and Laura Nitkin, respectively the driver and owner of the vehicle involved in the accident underlying this case, were dismissed pursuant to the parties' stipulation. Accordingly, we use the term "defendant" to refer to Costco Wholesale Corporation only.

-1-

between the pumps and the queue. Plaintiff's car was parked at a forward gas pump, and Robert White's vehicle was parked at the rear pump of the same island. Edward Skiba's vehicle was in the front of a queue, behind the painted stop line, waiting for an available pump in that island. Donald Nitkin's vehicle was behind Skiba's vehicle. When Nitkin started his vehicle to move forward in the queue, it rapidly accelerated and struck Skiba's vehicle, pushing it forward and causing it to strike the rear of White's vehicle, which in turn pushed forward into the rear of plaintiff's vehicle. Plaintiff was pinched between the two vehicles. He suffered severe injuries that eventually led to the amputation of both of his legs.

Plaintiff filed a complaint against defendant, asserting claims of negligence and nuisance.[2] Plaintiff's negligence claim was premised on multiple theories of ordinary negligence and premises liability, as well as product liability involving a negligent design (both defective design and failure-to-warn). Plaintiff asserted that the long queues of waiting vehicles created a "high likelihood that the motorists will turn off their vehicles" while waiting. Plaintiff alleged that defendant breached its duty of care to its invitee, plaintiff, by failing to maintain the gas station in a safe condition, failing to take appropriate safeguards to prevent accidents, and failing to warn plaintiff of the dangerous conditions. Plaintiff further alleged that defendant's failure to maintain the premises in a safe condition, failure to take reasonable precautions against accidents, failure to warn plaintiff of the hazards, and failure to provide a safe location to purchase gasoline, established that defendant was "guilty of negligence and gross, willful and wanton negligence."[3]

Plaintiff's expert on traffic safety and gas station design, Nicholas Bellizzi, testified in his deposition that defendant's gas station design was unreasonably hazardous because it was not designed to minimize "pedestrian-vehicle" conflicts. Bellizzi identified features of the gas station design that he believed aggravated the potential for such conflicts, namely, that (1) defendant allows only one-way traffic at the gas station, which causes long queues to form as vehicles are waiting for an available pump; (2) the queues are long because defendant is a "hyperstation," and its business model enables it to sell gasoline at a lower price than conventional gas stations, thereby attracting a high volume of customers; and (3) the queues are collinear with the area in front of the pumps where customers fuel their vehicles. Consequently, when a car in the queue collides with the car in front of it and starts a chain reaction, pedestrians at the pump are in danger of being struck.

Defendant moved for summary disposition, arguing that Bellizzi's deposition testimony failed to establish that defendant's gas station was not reasonably designed to protect pedestrians from the hazards of vehicle-pedestrian conflicts. The trial court agreed and granted defendant's motion. The court also denied plaintiff's motion for reconsideration. This appeal followed.

---

[2] The trial court granted summary disposition in favor of defendant on plaintiff's nuisance claim, and plaintiff does not raise any issues on appeal challenging that decision.

[3] This summary of plaintiff's negligence claims reflect the fact that they were not presented in separate counts, but rather in a single, "omnibus" style, count.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). A motion for summary disposition under MCR 2.116(C)(10) challenges the factual sufficiency of a claim, and this Court considers the evidence—including "affidavits, depositions, admissions, or other documentary evidence"—in the light most favorable to the nonmoving party. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). "The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). "Opinions, conclusionary denials, unsworn averments, and inadmissible hearsay do not satisfy the court rule; disputed fact (or the lack of it) must be established by admissible evidence." *Palazzola v Karmazin Prod Corp*, 223 Mich App 141, 155-156; 565 NW2d 868 (1997) (citation omitted). Summary disposition may be granted under MCR 2.116(C)(10) when "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. at 116.

## III. NEGLIGENT DESIGN

Plaintiff argues on appeal that the trial court erred by granting defendant's motion for summary disposition under MCR 2.116(C)(10), because defendant's gas station was negligently designed such that it created an unreasonable risk of harm. We disagree.

Plaintiff contends that defendant's gas station was hazardous because its design did not minimize vehicle-pedestrian conflicts. The trial court and the parties relied on product liability cases involving claims that a product was defectively designed. Product liability analysis is appropriate when a plaintiff claims that his or her injuries was caused by the design of "a relatively simple permanent or semi-permanent structure[] built to design specifications subject to governmental regulation." See *Lawrenchuk v Riverside Arena, Inc*, 214 Mich App 431, 434-435; 542 NW2d 612 (1995) (rollerskating rink); *Novotney v Burger King Corp (On Remand)*, 198 Mich App 470, 474; 499 NW2d 379 (1993) (wheelchair ramp); *Glittenberg v Doughboy Recreational Industries (On Rehearing)*, 441 Mich 379, 396; 491 NW2d 208 (1992) (swimming pool). We assume without deciding that the analysis was properly applied in this case.

> In Michigan, there are two theories that will support a finding of negligent design. The first theory is based on a failure to warn. The second, more traditional means of proving negligent design is premised on a defective design of the product at the time it left the manufacturer's control. [*Cacevic v Simplimatic Engineering Co* (*"Cacevic I"*), 241 Mich App 717, 723; 617 NW2d 386 (2000), vacated and rem'd in part on other grounds 463 Mich 997 (2001).]

Here, plaintiff alleged both theories in his complaint. Where design defect is alleged, Michigan courts apply "a pure negligence, risk-utility test in products liability actions against manufacturers of products." *Prentis v Yale Mfg Co*, 421 Mich 670, 691; 365 NW2d 176 (1984). "A manufacturer has a duty to 'eliminate any unreasonable risk of foreseeable injury.'" *Bazinau v Mackinac Island Carriage Tours*, 233 Mich App 743, 757; 593 NW2d 219 (1999), quoting *Prentis*, 421 Mich at 693. Thus, the test for whether a design is defective "questions whether the

design chosen renders the product defective, i.e., whether a risk-utility analysis favored an available safer alternative. *Gregory v Cincinnati, Inc*, 450 Mich 1, 11-12; 538 NW2d 325 (1995).

This Court in *Lawrenchuk*, 214 Mich App at 435-436, analyzed a claim for defective design of a premises, and summarized the requirements that a plaintiff must satisfy with expert testimony in order to survive summary disposition:

> A plaintiff who claims that a product was defectively designed has the burden of producing evidence of the magnitude of the risk posed by the design, alternatives to the design, or other factors concerning the unreasonableness of the risk of a particular design. *Owens v Allis-Chalmers Corp*, 414 Mich 413, 429-432; 326 NW2d 372 (1982). . . . In determining whether a defect exists, the trier of fact must balance the risk of harm occasioned by the design against the design's utility. *Prentis v Yale Mfg Co*, 421 Mich 670, 688-689; 365 NW2d 176 (1984).

Applying these principles to the instant case, plaintiff was required to prove, through Bellizzi's testimony, that the design of defendant's gas station "constituted an unreasonable risk" to the gas station's customers. In *Cacevic v Simplimatic Engineering Co* (*On Remand*) (*"Cacevic II"*), 248 Mich App 670, 680; 645 NW2d 287 (2001), this Court observed:

> [A] prima facie case of a design defect premised upon the omission of a safety device requires first a showing of the magnitude of *foreseeable risks,* including the likelihood of occurrence of the type of accident precipitating the need for the safety device and the severity of injuries sustainable from such an accident. It secondly requires a showing of alternative safety devices and whether those devices would have been effective as a reasonable means of minimizing the foreseeable risk of danger. This latter showing may entail an evaluation of the alternative design in terms of its additional utility as a safety measure and its trade-offs against the costs and effective use of the product. [Emphasis in original; citations omitted.]

The omitted safety devices at issue in *Cacevic II* were safeguards on a palletizer to minimize the risk of injury when the operator had to reach inside to clear a jam. *Id*. at 672-673. Bellizzi's alternative designs to reduce the risk of vehicle-pedestrian conflicts at defendant's gas station are analogous to safety devices, whether they involve actual devices such as retractable bollards, or alternative layouts such as an expanded buffer zone.

Our review of the trial court's opinion reveals that its analysis of Bellizzi's expert opinion adequately addressed the first element of a prima facie case, as identified in *Cacevic II*, the "magnitude of foreseeable risks" including the "likelihood of occurrence of the type of accident." The court determined that Bellizzi had failed to establish that defendant's gas station plan created an unreasonable risk of injury associated with the features of one-way traffic, collinear queuing, and high volume of sales. Plaintiff argues that Bellizzi's opinion that these features created a hazard was sufficient to establish a question of material fact precluding summary disposition. An expert's opinion must be based on sufficient facts or data. *Amorello v Monsanto Corp*, 186 Mich App 324, 331; 463 NW2d 487 (1990); MRE 702. Bellizzi opined that defendant's

marketing practices, combined with the fact that defendant allows only one-way traffic at the gas station, caused large queues to form. Further, when a lengthy queue is formed near the pumps, a pedestrian crossing between cars is vulnerable to a chain reaction accident such as the one that injured plaintiff. Bellizzi opined that the pedestrian could not detect the hazard because a chain reaction could begin in the back of the queue.

The hazard Bellizzi identified is narrow. Plaintiff does not attempt to argue that all self-service gas stations are unreasonably dangerous because of the proximity of moving vehicles to pedestrians, but instead maintains that defendant's uniquely designed hyperstation model is unreasonably hazardous because of the possibility of a chain-reaction accident.

We agree with defendant that Bellizzi failed to establish the magnitude of the risk he identified. He did not explain why the chain-reaction type of accident that injured plaintiff is more dangerous or more likely than any other type of pedestrian-vehicle accident in a self-service gas station or other area where pedestrians are in proximity to moving vehicles. He also did not explain why the queue and layout of the gas station create circumstances where a chain-reaction accident is more likely to occur than in any other circumstance involving a high occurrence of pedestrian-vehicle conflicts. Bellizzi did not provide any data or calculations regarding the likelihood of a chain-reaction accident at the subject gas station. Bellizzi emphasized that "the global conflict of this long line of cars queued up" create additional pedestrian-vehicle conflicts not found at other gas stations, but the queue does not increase the number of pedestrians at the pump, it only increases the number of vehicles waiting for pumps. Bellizzi's focus on the queue as the locus of hazard is misplaced because these vehicles are remote from the pedestrians pumping gas. The queued vehicles only present a hazard if a driver suddenly accelerates and starts a chain reaction, but Bellizzi failed to estimate the risk of this occurring. Bellizzi also identified the one-way traffic pattern of defendant's gas station as a factor that created a hazard for pedestrians, but he did not compare this hazard to the hazard of a pedestrian being hit from two directions or from behind, as could happen in a two-way gas station. Bellizzi's expert opinion failed to establish an unreasonably dangerous condition because it merely singled out a highly specific type of accident as more likely to occur at defendant's gas stations than at other gas stations, without assessing the magnitude of that type of accident, in terms of how that type of accident is more likely or more hazardous than other types of pedestrian-vehicle accidents at gas stations. Any configuration of traffic in a gas station, parking lot, or other location where pedestrians are in proximity to moving vehicles might permit a specific type of accident that would not occur in other configurations, but that in itself is not sufficient to prove that the configuration in question is unreasonably hazardous.

Whether Bellizzi's testimony satisfies the second requirement, to establish that one of the alternative plans offered a reasonable trade-off between enhanced safety and cost-effective and utilitarian function, is a closer question, at least with respect to two of his proposals. It is possible that Bellizzi's proposal for an increased buffer zone between the pumps and the queue would not require costly physical alterations to the gas station. This plan would give a driver more time and space to react and apply the brake in the event of pedal confusion or an unexpected surge forward. However, Bellizzi admitted that such a proposal could result in gas queues backing up into warehouse parking lot and towards the entrance to the property from the road, which would create its own hazards.

-5-

Bellizzi's plans for vehicle queues lined up perpendicular to the pumps, or collinear to a bollard, are deficient because he did not offer a cost-benefit analysis; so too is his proposal to increase the space between gas pumps. Assuming, arguendo, that these plans would reduce the risk of a chain reaction or unexpected surge accident, there is no analysis of how they would impact other types of vehicle-pedestrian conflicts. For example, if cars were lined up perpendicular to the pumps, drivers would have to turn their vehicles to position them beside the pumps. Vehicles turning into the space where pedestrians pump gas could create a new or different hazard, but Bellizzi does not account for that possibility.

Ultimately, we conclude that the trial court did not err in concluding that plaintiff had failed to demonstrate that any of Bellizzi's proposed alternatives "would have been effective as a reasonable means of minimizing the foreseeable risk of danger" by showing a positive trade-off between "additional utility as a safety measure and . . . the costs and effective use of the product." *Caervic II*, 248 Mich App at 680.

Further, as discussed in Part IV, the trial court found that the hazard of a pedestrian being hit by a car was obvious. In the context of defective design, as opposed to failure to warn claims and premises liability claims, a defendant's liability is not necessarily precluded by the fact that a hazard is open and obvious. See *Glittenberg*, 441 Mich at 394 ("Because the manufacturer's liability for choice of design is not determined solely by looking at the obvious nature of the alleged defect, obviousness of the danger does not preclude the possibility that an alternative design could reduce the risk of harm at a cost and in a manner that maintains the product[']s utility.) However, "an examination of whether the alleged design defect was open and obvious at the time the plaintiff was injured is relevant." *Cacevic I*, 241 Mich App at 728. Thus, the obviousness of the hazard was a relevant factor in the trial court's determination.

With regard to a failure-to-warn product liability claim, a product manufacturer owes no duty to warn a user of a product of hazards that are not unreasonably dangerous and are open and obvious. *Laier v Kitchen*, 266 Mich App 482, 488-489; 702 NW2d 199 (2005). Although Bellizzi opined that a pedestrian would not be aware of the actions of cars further back in the queue, the fact remains that the hazard of being struck by a car while a pedestrian in an area with many cars moving in and out of the area is an obvious one. See *Lugo v Ameritech*, 464 Mich 512, 522; 629 NW2d 384 (2001) ("[t]here is certainly nothing 'unusual' about vehicles being driven in a parking lot, and, accordingly, this is not a factor that removes this case from the open and obvious danger doctrine.").

In sum, plaintiff identified a specific hazard associated with defendant's innovative gas station design, but his expert did not offer an opinion on the magnitude of the risk or provide a cost-benefit analysis for an alternative design to reduce the risk. Accordingly, he failed to establish a genuine issue of material fact that the defendant's gas station was negligently designed. Additionally, with regard defendant's alleged failure to warn, the open and obvious doctrine bars those claims.

Plaintiff raises several additional issues with the trial court's opinion. Although we agree that the trial court's references to its own online research into other gas stations, or to the prevailing industry standards, would not in itself support a grant of summary disposition, information on prevailing industry standards is relevant to a determination of negligence.

*Marietta v Cliff's Ridge, Inc*, 385 Mich 364, 369-370; 189 NW2d 208 (1971). Further, our de novo review of the record leaves us satisfied that the trial court reached the correct conclusion. *West*, 469 Mich at 183.

Plaintiff also argues that the trial court, in denying his motion for reconsideration, improperly found that one-way traffic through the pumps is "seemingly" safer than two-way traffic, and gave undue consideration to the absence of written standards corroborating Bellizzi's opinion. We disagree. The absence of written standards was only one factor the trial court considered in assessing whether Bellizzi's opinion established a genuine issue of material fact. Bellizzi acknowledged that his opinions were not based on written standards, but rather on his experience and training in the profession. Defendant's expert, Richard Beaubien, agreed that a design's safety must be determined according to a safety engineer's judgment. The trial court's decision was based on its determination that Bellizzi's subjective opinion did not support a finding that the condition on defendant's property was unreasonably hazardous.

Plaintiff also argues that the trial court erred in refusing to consider a written summary of Bellizzi's opinion. MCR 2.119(B) provides that an affidavit supporting or opposing a motion must both "state with particularity facts admissible as evidence establishing or denying the grounds stated in the motion," and "show affirmatively that the affiant, if sworn as a witness, can testify competently to the facts stated in the affidavit." Here, the written summary of Bellizzi's anticipated testimony did not satisfy these requirements. The document was not a sworn affidavit. The document is not signed, has no title, does not indicate who created the document, and does not cite the source of its content. The trial court properly disregarded it. However, the content does not affect the outcome, because it does not contradict or add to Bellizzi's deposition testimony.

## IV. REMAINING PORTIONS OF PLAINTIFF'S NEGLIGENCE CLAIM

Plaintiff also argues that the trial court erred in applying the open and obvious danger doctrine to its negligence claim. With regard to the portions of the claims premised on product liability theory, it is clear from the trial court's opinion that it found, apart from the obviousness of the hazard, that plaintiff had failed to establish a defective design. With regards to the remaining portions of plaintiff's negligence claim, plaintiff contends that they sound in ordinary negligence, not premises liability, and therefore that the open and obvious doctrine does not apply. We disagree.

"In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). For a premises liability claim, "[t]he duty that a possessor of land owes to another person who is on the land depends on the latter person's status." *Quinto v Woodward Detroit CVS, LLC*, 305 Mich App 73, 75; 850 NW2d 642 (2014) (citation omitted). Here, the parties do not dispute plaintiff's status as an invitee on defendant's premises. "[I]nvitee status is commonly afforded to persons entering upon the property of another for business purposes." *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 598; 614 NW2d 88 (2000).

"It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). "If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012). For example, in *James v Alberts*, 464 Mich 12; 626 NW2d 158 (2001), our Supreme Court held that the plaintiff's claim sounded in premises liability where the plaintiff tripped on a buried cable that was exposed while the plaintiff assisted in digging a ditch on the defendant's land. *Id*. at 13-14, 19. The Court emphasized that the claim was one for premises liability because the plaintiff "contends that [his injury] arose out of a condition of the land, not out of the activity itself." *Id*. at 19. See also *Jahnke v Allen*, 308 Mich App 472; 865 NW2d 49 (2014).

Here, plaintiff's claim is based on a condition of defendant's land, namely the system for routing customers through the self-service gas station. As in *Jahnke* and *James*, the fact that defendant was allegedly negligent for allowing or causing the dangerous condition to exist does not transform the instant action to an action for ordinary negligence. Plaintiff's claim against defendant does not arise from any allegation that defendant did something to set in motion the chain reaction of automobile collisions that caused plaintiff's injury. Rather, plaintiff's claim arises from the allegation that defendant designed the gas station in such a way as to put plaintiff in the path of harm. Indeed, plaintiff's complaint alleges that defendant's gas station was "maintained in a dangerous or defective manner and condition that caused Plaintiff injury and damages," and that the dangerous and defective condition included "the long lines of customers, the one-way traffic flow, and the high volume of traffic." Accordingly, the remainder of plaintiff's claim sounds in premises liability.

> In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land. However, this duty does not generally encompass removal of open and obvious dangers. Open and obvious dangers exist "where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them . . . ." Regarding open and obvious dangers, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee. [*Joyce v Rubin*, 249 Mich App 231, 238; 642 NW2d 360, 364 (2002) (quotation marks and citations omitted).]

The test to determine if a hazard is open and obvious is whether "an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection." *Novotney*, 198 Mich App at 475. Here, the risk of a pedestrian being struck by a car while in using a self-service gas station is open and obvious. See *Lugo*, 464 Mich at 522. We therefore affirm the trial court's summary disposition for defendant on the remaining

portions of plaintiff's claim of negligence, based on plaintiff's failure to establish a genuine issue of material fact regarding whether a dangerous condition existed on defendant's land.[4]

Affirmed.

/s/ Deborah A. Servitto
/s/ Kurtis T. Wilder
/s/ Mark T. Boonstra

---

[4] Given our conclusion, we find it unnecessary to address plaintiff's arguments concerning his motions to compel discovery of prior incidents.